City of Elizabeth v. Shirley.

THE CITY OF ELIZABETH, appellant.

*v.*

CAROLINE C. SHIRLEY, responaent.

1. By a supplement to a city charter it was made the duty of the comptroller to give a certificate as to the liability of real estate for unpaid taxes or assessments, and it was declared that such certificate, in the hands of a *bona fide* purchaser or mortgagee, should relieve and discharge such real estate from any tax or assessment, except such as is therein stated to be unpaid. Two assessments had been laid on a certain lot owned by H.—one for the construction of a sewer, the other for paving the street. H. paid the paving assessment. The complainant, being about to purchase the lot, applied for and obtained a certificate of the comptroller under the act. The certificate set out the paving assessment, and stated that it was paid. The sewer assessment, which was unpaid, was omitted from the certificate. After the complainant took her deed, both assessments were set aside on *certioraris* presented by other parties, and H. sued and recovered back from the city the money he had paid in satisfying the paving assessment.—*Held*, that the complainant being a *bona fide* purchaser, the comptroller's certificate, by force of the supplement above referred to, concluded the city from making new assessments for the construction of the sewer or the paving.

2. *Kahl* v. *Love, 8 Vr. 5*, distinguished.

On the 27th of April, 1874, the city of Elizabeth caused an assessment to be made for the cost and expenses of paving Jefferson avenue. This assessment was laid on a lot on Jefferson avenue owned by George R. Hill, in common with other lands fronting on the avenue. Hill's lot was assessed in the sum of $1,211.76.

In June, 1874, a writ of *certiorari* was sued out by owners of other lands, which removed the assessment to the supreme court.

On the 14th of October, 1874, and during the pendency of the writ of *certiorari*, Hill paid the assessment laid on his lot.

On February 27th, 1875, judgment was rendered in the *certiorari* suit, setting aside the entire assessment.

In May, 1875, Hill sued the city to recover back the money paid by him to satisfy the assessment on his lot, and on the 11th of June, 1875, recovered a judgment, which the city paid on the 24th of December, 1875.

Another assessment was also laid on the same premises June 17th, 1874, for the cost and expenses of the Alina street sewer, amounting to $485.24. This latter assessment was also set aside July 17th, 1875, on a *certiorari* prosecuted by owners of other property.

On the 17th of July, 1876, the city caused a new assessment to be made for the costs and expenses of the sewer, in which the sum of $442.85 was assessed on the said lot.

On the 1st of August, 1876, a new assessment was also made and ratified for the cost and expenses of paving Jefferson avenue. In this assessment the sum of $1,474.80 was assessed on the said lot.

In 1874 Caroline C. Shirley purchased the Jefferson avenue lot of Hill. His deed, which contained full covenants of warranty against encumbrances and for title, is dated September 15th, 1874, and was acknowledged October 15th, 1874. It was not delivered until the latter part of October, 1874, and was recorded January 22d, 1875.

Mrs. Shirley gave a mortgage on the premises to John H. Davis, dated January 2d, 1875. This mortgage was foreclosed,

City of Elizabeth v. Shirley.

and the property bought by Davis. On the 3d of May, 1876, Davis reconveyed to Mrs. Shirley.

The city claims that the new assessments of July 17th, 1876, and August 1st, 1876, are liens on the premises in the ownership of Mrs. Shirley, and this bill was filed by Mrs. Shirley to have the lands declared free from such liens.

After a hearing before an advisory master, a decree was made in favor of the complainant, in accordance with the prayer of her bill. From this decree the city appealed.

On appeal from a decree of the chancellor, based on the following opinion of Barker Gummere, esq., advisory master:

1. I hold and determine that the case made by the pleadings in the cause arraigns the validity of the assessments upon the land of the complainant, against which she seeks relief by reason of matters not appearing on the face of the proceedings of the city authorities, and which must be demonstrated by extrinsic evidence; and that this court has jurisdiction of the subject matter of the suit. *Liebstein* v. *Newark, 9 C. E. Gr. 204; Smith* v. *Newark, 5 Stew. Eq. 4.*

2. I hold and determine that the defendants, by failing to raise the question of jurisdiction by demurrer or plea, or in their answer, and having answered fully, and come to a hearing on the bill, have waived their right to object to the jurisdiction of the court. *Morris Canal and Banking Co.* v. *Jersey City, 1 Beas. 259.*

3. I find and determine that the certificates of Henry Aitken, comptroller, respectively dated October 12th, 1874, and October 22d, 1874, were made by him on the application of the complainant, and were authorized by section 1 of the supplement to the charter of the city of Elizabeth, approved March 5th, 1874, and were made in conformity thereto, and that there is no mistake therein in the name of the owner, or from a misdescription of the property, and that the complainant was, at the dates thereof, a *bona fide* purchaser of the premises concerning which such certificates were made; that she contracted for the purchase

City of Elizabeth *v.* Shirley.

of said lands in September, 1874, and that she completed said purchase, and paid over the purchase-money to her vendor on the faith of said certificates; that said certificates ratified and re-affirmed the former certificate of said comptroller, dated December 22d, 1873, and represented (and she was thereby induced to believe) said lands to be clear of any liens for taxes or assessments on the part of said city; and that the said certificates relieved and discharged the said lands from all liability on account of expenses incurred by said city for paving Jefferson avenue, and on account of expenses incurred by said city in the construction of a sewer in Alina street and other streets.

4. I find and determine that the re-assessment upon said lands made on August 1st, 1876, on account of the aforesaid expenses incurred by the said city in the paving of Jefferson avenue, is invalid; and that at the time of said re-assessment the said lands were relieved and discharged from all liability on account of said expenses, by force of the aforesaid certificates.

5. I find and determine that the said certificates enured, not only to the benefit of the complainant, who was a *bona fide* purchaser of said lands at the date thereof, but to all her subsequent *bona fide* grantees of said lands; and that whether the foreclosure proceedings instituted by John H. Davis and his purchase of said lands thereunder, were proceedings adverse to the complainant, and his subsequent conveyance to her was a resale of said lands, or whether such proceedings, sale and re-conveyance were friendly proceedings, and the complainant was in fact the equitable owner of said lands throughout, is immaterial, and that in either case the complainant holds the said lands, relieved and discharged from the assessments and re-assessments stated in her bill.

The complainant is entitled to the relief prayed in her bill and to a perpetual injunction.

*Mr. Robert E. Chetwood*, for appellant.

*Mr. E. Q. Keasbey*, for respondent.

The opinion of the court was delivered by

Depue, J.

If the complainant's right to relief rested solely on the fact that these assessments were laid on her lands for an improvement made before she became owner, her bill would be without support. The common council has power to make a new assessment in case a former assessment is set aside by reason of informalities or irregularities. *P. L. of 1870 p. 758 § 13.* In *State, ex rel. Davis,* v. *Newark,* reported in connection with *State, ex rel. Doyle,* v. *Newark, 5 Vr. 236,* an assessment had been set aside on *certiorari,* and an act of the legislature was subsequently passed authorizing a new assessment for the same improvement. A re-assessment under the act was held valid as against the prosecutor, who had become owner of the lands in respect whereof he had been assessed, after the reversal of the former assessment.

Another ground for discharging the complainant's property from these re-assessments, somewhat pressed by counsel, is equally untenable. He contended that, without reference to the statute hereinafter referred to, the city was estopped from enforcing these re-assessments. His contention was, that the complainant having purchased the property relying on the comptroller's certificate that there was no unpaid assessment for the sewer, and that the assessment for the paving had been paid, on this fact alone the city was equitably estopped from making any assessments for these improvements. The conclusive answer to this argument is, that the officers of a municipality have no power to create estoppels which will bind the latter, unless authority to that effect is expressly granted by some statute. In *Kahl* v. *Love, 8 Vr. 5,* it was held that a purchaser who bought property relying on a tax collector's receipt as evidence that the taxes assessed on the premises had been paid, when in fact they were unpaid, acted at his peril, the collector being neither authorized nor required by any statute to give certificates that property was discharged from taxes. Such a certificate, if given with a fraudulent intent, may lay the foundation for an action against the officer for the deceit, but is in all respects destitute of force

City of Elizabeth v. Shirley.

against the municipality, unless it derives a binding force from some statutory provision.

If the complainant is entitled to relief, she must obtain it in virtue of the supplement to the city charter passed March 5th, 1874.

The first section of the act is in these words :

"That it shall be the duty of the comptroller of said city, on the payment of the fees hereby authorized, to give to any person requiring the same a certificate as to the liability of any real estate in said city for unpaid taxes or assessments, as shown by any records in his possession or office ; and such certificate in the hands of a *bona fide* purchaser or mortgagee of such real estate shall, unless a mistake has occurred in the name of the owner, or from a misdescription of the property, relieve and discharge such real estate from any tax or assessment, except such as is therein stated to be unpaid, which certificate shall in all cases be signed by the comptroller, but may be made either by him or by any clerk in his office whom he may designate for that purpose ; provided, that such comptroller, when any such certificate shall actually be made out by him or such clerk, shall be responsible respectively to the city of Elizabeth for any loss occasioned by any erroneous certificate through the carelessness or negligence of such comptroller or clerk, but for no other cause." *P. L. of 1874 p. 242.*

The complainant began negotiations with Hill in September, 1874. They were conducted by her agent, Philip L. Wilson, a counselor-at-law, doing business in the city of New York, who was employed by her to examine the title. Hill brought to Wilson a certificate signed by the comptroller, dated December, 1873, certifying that there were no unpaid taxes or assessments on the premises. This certificate was not satisfactory, and Mr. Wilson took it to Elizabeth and left it in the comptroller's office, with a request that the comptroller should bring down the search to date. The paper was returned to him, and with it the following certificate :

"COMPTROLLER'S OFFICE, Elizabeth, N. J., Oct. 12, 1874.

" I, Henry Aitken, comptroller of the city of Elizabeth, do hereby certify that I have examined the records in my office in continuation of above search, and I do now find taxes and assessments unpaid as follows, viz.:

" No 6 for paving Jefferson avenue........................................... $1,211 76
" Add interest from Apl. 27, '74, to June 27, '74, at 7 °/₀, and add
    interest from June 27, 1874, at 10 °/₀, 539, 13, Taxes of 1874.....   107 20
" Add interest from Oct. 20, 1874, at 24 °/₀.

" HENRY AITKEN, *Comptroller.*"

Wilson still refused to pass the title, and on the 22d of October, 1874, Hill produced an additional certificate annexed, as follows:

"October 22d, 1874.    The above taxes and assessments have been **paid** since the search was made.    HENRY AITKEN, *Comptroller*."

In fact, Hill had paid the assessments on the 14th of October. On the production of these certificates Wilson passed the title; the purchase was closed and the purchase-money paid.

No laches can be imputed to the complainant. She became the purchaser of the premises in good faith, relying on the comptroller's certificate. She did not lose her position as a *bona fide* purchaser by her mortgage to Davis, and the sale of the premises under the foreclosure. The foreclosure was made to clear up some intervening cloud on the title, and the premises were reconveyed to the complainant by Davis, for a nominal consideration, before the new assessments were confirmed. Nor is the complainant debarred from relief by any want of good faith or diligence in endeavoring to protect her interests. Neither she nor her counsel had any knowledge that the first assessment for paving Jefferson avenue was set aside, or that Hill had sued to recover back the money paid on it, until after Hill had recovered his judgment and the city had paid it. The case turns entirely on the effect the legislature designed, by the act of 1874, to give to certificates of search made by the comptroller as a protection to purchasers and mortgagees of city property.

The act makes it the duty of the comptroller to give the certificate when required, and the body of the section, as well as the proviso, shows that the certificate, when given, was regarded as an official act which should bind the city. In this respect this case is distinguished from *Kahl* v. *Love, 8 Vr. 5*.

By the seventeenth section of the supplement to the city charter, passed April 2d, 1869, the legislature provided for official certificates with respect to the liability of real estate to assessments which were made available in the hands of *bona fide* purchasers and mortgagees. *P. L. of 1869 p. 1262*. This pro-

vision was continued as section 23 in the supplement of April 4th, 1872 (*P. L. of 1872 p. 1202*), but was repealed by the eighteenth section of the supplement of April 4th, 1873, which not only repealed the section in express words, but also enacted that thereafter nothing should be held as discharging property from the lien of taxes and assessments but actual payment thereof. *P. L. of 1870 p. 787.* In 1874, the repealed section, with some unimportant alterations, was re-enacted and restored in the language above quoted. *P. L. of 1874 p. 242.* These changes in the legislation relative to assessments in the city of Elizabeth, indicate a deliberate purpose on the part of the legislature to provide, as far as practicable, a means of enabling purchasers and mortgagees to protect their estates from liability for taxes and assessments for prior improvements.

Assessments for benefits are required to be made by a board of commissioners, whose duty it is to make all assessments for damages and benefits. The comptroller is, *ex-officio*, secretary of the board. He is required to keep its minutes, and is the custodian of the maps and records pertaining to the work of the board, and must endorse every certificate of assessment returned by the board. A book called the "Record of Unpaid Assessments" is kept, in which is entered the names of the owners of the property, the description thereof, the amount of the assessment, the date thereof and when the same is payable, which book is to be properly indexed. *P. L. of 1869 p. 1261 §§ 14–16; P. L. of 1873 p. 778 §§ 2, 3, 4.* By the supplement of April 4th, 1872, the comptroller is charged with the performance of all the duties connected with the collection of assessments, except the receipt of the money therefor, which is to be paid to the treasurer. *P. L. of 1872 p. 1192 § 3.* With such a recording system, and schemes of public improvement prosecuted by the city on an extensive scale, it was eminently proper and judicious that a method should be provided which would, in some measure, enable owners of city property to sell or mortgage it upon a certification of the amount of assessments to which it would be subject.

The charter confers upon the city a general power of assess-

ing property to pay the costs and expenses of public improvements, restrained only within the area and limit of actual benefits, and the city may practically choose its own time for making its assessments.   The act of 1874 gives purchasers and mortgagees no protection against the general power of the city to make assessments, for until the assessment is in fact made, it cannot appear in the city records as an assessment paid or unpaid.

But when the assessment has been made, the situation is entirely changed.   The power of the city to lay assessments has been exercised, and the proportion of the cost and expenses charged on each lot subject to assessment has been ascertained. The assessment, when made, is final and conclusive, and so long as it remains unreversed in due course of law, the lands are relieved from future assessments for the same improvement.   A certificate of the comptroller, under the act of 1874, that the assessment has been made and has been paid, is in effect an official certificate that the share of the costs and expenses of the improvement assessable on the particular lot has been ascertained, and has been satisfied and discharged.   The act declares that such certificate shall, as in favor of *bona fide* purchasers and mortgagees, operate to relieve and discharge such real estate from any tax or assessment, except such as is therein stated to be unpaid.

A construction which applies the certificate only to the state of the record as it was when the certificate was given, and allows a new assessment to be made which would become a lien in case the assessment certified to is reversed, would defeat the object which the act was intended to accomplish, and violate the spirit as well as the letter of the statute.   The legislative purpose was to provide a certificate upon which purchasers and mortgagees might safely act.   A purchaser or mortgagee who obtains a certificate that an assessment has been made and has been paid, or one which omits an assessment made and on record, invests his money on an official assurance that the property has been enhanced in value by the improvement, and at the same time is free from liability to assessment therefor.   A subsequent assess-

ment for such improvement, however brought about, would run counter to the assurance thus given. The injustice of allowing such an assessment to become a lien on the premises after a conveyance or mortgage, taken in reliance upon the certificate, cannot be better illustrated than by the facts of this case. The comptroller certified to the complainant the Jefferson avenue assessment as the only tax or assessment on the property, and that it had been paid. The complainant, on that certification, purchased the property, and paid, it is to be presumed, the full value of it; and if these two re-assessments are sustained as liens, her title, instead of being free from such encumbrances, will have become subject to the lien of assessments, amounting, with interest and costs, to over $2,000. I cannot adopt a construction of the statute which would countenance such a measure of injustice, and destroy the value of certificates given under the act, especially where the act expressly declares that the certificate shall relieve the property from any tax or assessment, except such as is stated in the certificate to be unpaid.

The Alina street sewer assessment had been made, and was unreversed when the certificate was given. For the omission of that assessment, from the certificate, the city has a remedy against its delinquent officer, and it might have been protected against loss of the re-assessment for the paving of Jefferson avenue. The complainant's deed was on record. On an allegation that Hill had conveyed with covenants of warranty and against encumbrances, a court of equity would have restrained the recovery of the money paid in satisfaction of the first assessment, until the rights of all parties had been protected; and a court of law might have stayed execution of the judgment, or imposed terms that would be equitable.

No mistake had occurred in the name of the owner, or from a misdescription of the property, and the complainant is a *bona fide* purchaser. The complainant's case is within the provisions of the act, and we think she is entitled to have her property relieved from the lien of these re-assessments.

Much of the argument of the appellant's counsel was directed in denial of the jurisdiction of a court of equity to entertain

City of Elizabeth v. Shirley.

this suit. The objection was not taken by demurrer or in the answer. The law has been settled in this court that chancery has no jurisdiction over assessments made in the course of municipal improvements, in the absence of specific equities. *Jersey City* v. *Lembeck, 4 Stew. Eq. 255.* The specific equity on which the complainant's suit is founded, is the equitable estoppel arising from the certificate; and estoppels *in pais* have always been recognized as a ground of equity jurisdiction, of which the equity court will not, in all cases, be deprived by reason of the estoppel being available at law as well as in equity. *The Society &c.* v. *L. V. R. R. Co., 5 Stew. Eq. 329.*

The decree should be affirmed.

DIXON, J. (*dissenting*).

The statute relied on in this case requires the comptroller to give certificates as to the liability of any real estate in the city for *unpaid taxes and assessments, as shown by any records in his possession or office;* and provides that such certificates shall relieve and discharge the real estate from any tax or assessment, except such as is therein stated to be unpaid.

The clause in this act which provides for discharging the land, should be confined to such taxes and assessments as it is the duty of the comptroller to certify, *i. e.,* those unpaid, as shown in his office; and if he certifies the truth as to these, the statute does not design to change the position of either the city or the landowner with reference thereto.

As to the paving assessment, the truth was shown on the face of the certificate, and therefore as to this all the rights of the city should be preserved, and among them the right to levy a new assessment in case the old one had been set aside in judicial proceedings.

For this reason, the decree below, so far as it denies the right of the city to enforce the new assessment for paving, should be reversed.

For affirmance—DEPUE, PARKER, REED, SCUDDER, VAN SYCKEL, COLE, GREEN, KIRK, WHITAKER—9.

For reversal—DIXON, MAGIE—2.