The C.H.G. Co. was about to execute to one Holtje a mortgage for $11,000 covering land in the city of Englewood. Complainant arranged to purchase this mortgage from Holtje, upon Holtje's agreement at his own expense, to furnish complainant with a title policy of the Peoples Trust and Guaranty Company. For the purpose of ascertaining what liens there might be against the land to be mortgaged, Peoples Company made written application to the collector of taxes of Englewood for a search for unpaid municipal *Page 147 
liens and obtained his certificate of tax search showing only taxes of 1928 and 1929. The certificate is headed "City of Englewood, Search for Municipal Liens, Chapter 237, Laws of 1918; Chapter 130, Laws of 1921," and is not addressed or directed to anyone. The mortgage and an assignment to complainant were thereafter executed and delivered in the office of Peoples Company; Peoples Company issued its title guaranty to and in the name of complainant, guaranteeing it against loss or damage which it might sustain as assignee of said mortgage, by reason of prior liens on or defects in the title to the mortgaged premises and stating in said guaranty that it was issued upon an application by or in behalf of complainant.
One year later complainant's mortgage became in default and foreclosure proceedings were instituted. After decree for sale complainant caused another tax search to be made against the property (presumably for the purpose of ascertaining what liens should be shown in the advertisement of sale) which second search disclosed an unpaid assessment of $1,210 for the improvement of Manor Road as a lien against the mortgaged land, confirmed February 19th, 1929, nine months before the first mentioned tax search was issued. This second tax search was the first notice to complainant of the existence of such assessment. The foreclosure suit proceeded to sale and the land was bought in by complainant, who still owns it. Thereafter the city of Englewood advertised the land for sale for non-payment of said assessment and complainant filed its bill herein, alleging that pursuant toP.L. 1918 ch. 237 § 14, the certificate of search obtained by Peoples Company showing the land to be free from the assessment in question, protects it against the lien of such assessment and praying that the city be restrained from selling the land to satisfy such assessment and for a decree canceling the same on the books and record of the municipality.
The act is question is also to be found in Cum. Supp. Comp.Stat. p. 3526. It provides (sections 10 to 13) that the municipality shall designate a bonded official to make examination of its records for unpaid municipal liens, who *Page 148 
upon receipt of a written application from any person, with a fee for the use of the municipality, shall certify what municipal charges are liens against the property described in the application. Section 14 provides:
"Any person who shall acquire for valuable consideration an interest in any lands covered by any such official tax search, in reliance on said tax search, shall hold such interest free from any municipal lien held by the municipality and not shown on such search."
The first defense is a denial of the jurisdiction of this court to entertain this suit on the ground that it has been settled that chancery has no jurisdiction over assessments made in the course of municipal improvements.
An estoppel in pais has always been recognized as a ground for equity jurisdiction and if complainant can come within the provisions of section 14 above, the proofs show a situation arising from the certificate of a city official authorized by the municipality to issue such certificate, which estops the city from repudiating the acts of its official. City of Elizabeth v.Shirley, 35 N.J. Eq. 515; Erie Elevator Co. v. Mayor, c., ofJersey City, 84 N.J. Eq. 176.
The next defense is that reliance on the certificate of tax search was by Peoples Company and not by complainant.
When complainant was solicited to purchase the mortgage, it wanted to know the state of title of the mortgaged premises. It could not make the title search itself but it could secure the services of a title examiner, or of a title company, and it chose the latter and so Peoples Company was employed, through Holtje, to examine title for complainant and to certify and guaranty to it the result of such work. It is a well known and necessary custom for a title searcher, in connection with his employment, to apply to the official designated by the municipality, for a certificate of tax search, and when Peoples Company applied for and obtained such certificate it was acting on behalf of complainant and as its agent under its employment. The bill of complaint charges and the answer admits, that the person who made the certificate in question was a duly bonded official designated by *Page 149 
the municipality to make examination of its records as to unpaid municipal liens and to certify the result thereof. The statute does not require the applicant for a tax search to state whether he applies as principal or agent. It can make no difference to the official searcher, or to the municipality, in what capacity the application is made, because the act provides that upon receipt of a written application from any person, the tax searcher shall examine the records and issue a certificate. The certificate here given was not pursuant to a contract between the collector and Peoples Company based upon the application made by the latter, but in performance of a public duty and the statute says that for a breach of that duty the municipality shall be responsible to any person who, in reliance on the certificate, acquired an interest in the land covered thereby. When complainant received a report from Peoples Company as to the condition of the title, it not only relied on that report (subsequently followed by a title policy), but it also relied upon the accuracy of all public records and official certificates which Peoples Company was required to examine or obtain in order to guaranty the title to complainant. The legislative purpose in enacting the legislation in question was to protect investors, either grantees or mortgagees of real estate, by providing for a certificate as to tax and assessment liens on which they can safely act, whether such certificate be furnished directly to a grantee or mortgagee, or to an agent employed to obtain it and section 59 of the act provides that the act shall be taken as a remedial statute, to be liberally construed to effectuate the remedial object thereof. It could not have been the legislative intent that a title searcher who applies for and receives an official tax search shall be the only person who can be said to rely on the certificate. If so, there is no penalty in such a case to be imposed on the municipality for an erroneous certificate, because it is only the person who acquires an interest in the land who is protected by the statute. In this particular case it happened that prior to the closing of the transaction, complainant wrote Peoples Company that the mortgage to be assigned to complainant *Page 150 
was to be a first lien subject to no unpaid tax or assessment and instructing Peoples Company to see that all taxes and assessments against the mortgaged property were paid in full. But even had the attention of Peoples Company not been thus specially called to complainant's requirement concerning municipal liens, complainant had the right to assume that Peoples Company, as its agent, would take such means as were customary and open to it to ascertain the facts as to such liens. I am of the opinion that the complainant is a "person" who, within the intent of the statute, should be said to have relied on the certificate of tax search.
The final defense is that the interest which complainant acquired in reliance on the certificate was as mortgagee and that having thereafter foreclosed its mortgage and purchased the mortgaged premises at the foreclosure sale, then knowing of the assessment against which it now seeks relief, it is not now entitled to the benefit of the statute.
Complainant's interest as mortgagee included all rights and remedies which appertained to such estate. Incident to such interest was the right to hold the land as security for payment of its debt and upon default to have the land appropriated to such payment through ejectment or sale under foreclosure. Wade
v. Miller, 32 N.J. Law 296; Marshall's Exrs. v. Hadley,50 N.J. Eq. 547; Savings Investment and Trust Co. v. United Realtyand Mortgage Co., 84 N.J. Eq. 472. When payment was defaulted and complainant was forced to foreclose, a decree for sale had been entered before complainant learned, through another tax search, of the existence of the assessment. The knowledge then acquired did not make it incumbent on complainant to discontinue its suit, or even to open its final decree and make the city of Englewood a party to its foreclosure suit, because complainant's rights were fixed when it acquired its mortgage interest in reliance on the first tax search and it was entitled to enforce such rights. It purchased the property at the foreclosure sale to protect its mortgage interest and the title it now holds is by virtue of the terms of its mortgage, which created an immediate estate in the mortgaged premises in fee in complainant, *Page 151 
subject to defeasance by payment, except that the right to entry and possession was postponed until default. Colton v. Depew,60 N.J. Eq. 454.
I regard the case of City of Elizabeth v. Shirley, supra, as authority for the conclusion I have reached herein. The facts in that case and this are somewhat similar and therein the court of errors and appeals held a purchaser of property whose attorney obtained for her an official certificate of tax search, harmless from the lien of an assessment omitted from the certificate, and in that case the person for whom such certificate had been procured, had thereafter mortgaged the property, suffered foreclosure under which the property was sold to another and the property had by that other, been reconveyed to the person for whom the tax search had been made.
Having found that complainant's present interest in the land was acquired in reliance on an official certificate of search for municipal liens which failed to disclose an assessment which was a lien against the lands, the statute under which complainant claims relief provides that complainant shall hold its interest free from the lien of such undisclosed assessment. To decree merely that complainant shall hold its property free from the assessment and to restrain the municipality from selling the land for non-payment thereof and yet permit the assessment to remain open of record, will not give complainant complete relief, because the uncanceled assessment will always appear as a cloud on complainant's title and therefore the decree will be, in effect, that the complainant's title is free from the lien of said assessment; that the municipality be restrained from a sale thereunder and that the assessment be canceled of record as against complainant's property. Erie Elevator Co. v. Mayor,c., of Jersey City, supra.
I scarcely need add that if the official who issued the incorrect certificate is under the proper bond to the municipality, the latter will suffer no loss by reason of his mistake. *Page 152