148 N.J. Super. 15 (1977)
371 A.2d 806
JOSEPH MALLOY, PLAINTIFF-APPELLANT,
v.
STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted January 24, 1977.
Decided March 4, 1977.
*17 Before Judges BISCHOFF, MORGAN and RIZZI.
Mr. Michael F. Chazkel, Attorney for appellant.
Mr. William F. Hyland, Attorney General, attorney for respondent. (Mrs. Erminie Conley, Deputy Attorney General, of counsel; Mr. George W. Fisher, Deputy Attorney General, on the brief.)
RIZZI, J.S.C., Temporarily Assigned.
The issue generated by this appeal is whether the State of New Jersey is immune from suit in a tort action in a case where an employee erroneously informed an applicant for a real estate salesman's license that he had failed the test.
On May 17, 1973 plaintiff took an examination for licensing as a real estate salesman under the direction of the New Jersey Real Estate Commission, as required by N.J.S.A. 45:15-10. On May 23, 1973 he was notified by the *18 Commission by letter that he had failed the examination. More than a year later, in August 1974, plaintiff was informed by the Commission that the prior letter was in error and that he had passed the examination he took in May 1973. Plaintiff thereafter commenced an action against the State of New Jersey founded in negligence on the part of the State in maintaining its records and in improperly informing him that he had failed, and demanding damages caused thereby, including the cost of real estate courses he later took to prepare for the next examination, and loss of income.
The matter came before the trial judge on defendant's motion for summary judgment based upon the doctrine of immunity allegedly afforded by the New Jersey Tort Claims Act (N.J.S.A. 59:1-1 et seq.). At the same time the judge heard a cross-motion by plaintiff for judgment of liability against defendant. The judge granted defendant's motion for summary judgment and denied plaintiff's cross-motion. This appeal by plaintiff followed.
We are of the view that plaintiff's motion for summary judgment was properly denied since the record below does not support a determination of negligence as a matter of law. As to defendant's motion for summary judgment, we hold that the judge erroneously determined that the State was immunized against this action and we reverse.
It is the contention of the State that it is entitled to immunity by virtues of the provisions of a section of our Tort Claims Act, N.J.S.A. 59:2-5, which provides:
A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization where the public entity or public employee is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked.
The State would draw no distinction between discretionary activity and ministerial activity, but asserts that this section absolutely insulates it against all claims where *19 the public entity is empowered by law to determine whether to issue or deny a license or other authorization. It asserts that the cited statute does not mandate or support a conclusion, as contended by plaintiff, that where the public entity possesses the requisite statutory authorization it is immune from suit only if the action or inaction in question was discretionary.
The State concedes that the act of the Commission involved in mailing out the result of appellant's examination was a ministerial act, and as to this there can be no doubt.
Historically, the State of New Jersey and its departments and agencies enjoyed complete sovereign immunity in tort actions. Fitzgerald v. Palmer, 47 N.J. 106 (1966). The movement toward the diminution of the doctrine of immunity commenced in New Jersey with the decision in Willis v. Dept. of Conserv. and Econ. Dev., 55 N.J. 534 (1970). In that case the Supreme Court sanctioned certain types of action against the State, but only prospectively and after January 1, 1971. The Legislature intervened, as it was authorized to do in Willis, to extend the prohibited period to July 1, 1972. Eventually the New Jersey Tort Claims Act was enacted and became effective on July 1, 1972. The act re-established governmental immunity from tort liability except for specific provisions therein establishing liability. A section of the act included a legislative declaration in the following language (N.J.S.A. 59:1-2):
The Legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity. On the other hand the Legislature recognizes that while a private entrepreneur may readily be held liable for negligence within the chosen ambit of his activity, the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done. Consequently, it is hereby declared to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein. All of the provisions of this act should be construed with a view to carry out the above legislative declaration.
*20 N.J.S.A. 59:2-1(a) provides for general immunity in the following language:
Except as provided in this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.
N.J.S.A. 59:2-2(a), however, provides that:
A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances.
It appears without question that the latter statutory section authorizes a cause of action against the State such as that asserted by appellant herein, unless specifically immunized by another section of the act. The State contends such immunity will be found in N.J.S.A. 59:2-5, supra.
We do not read N.J.S.A. 59:2-5 to grant immunity to the State for the ministerial functions of its employees, but hold that this section applies only to the discretionary activity of the servants of government. By its very terms it applies only to those cases of failure or refusal to issue a license "where the public entity or public employee is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked." We do not construe the word "failure" to intend thereby to include the ministerial failure to send out a proper notice, but rather we hold the words "failure or refusal" to refer to the decision-making process involved in the issuance or denial of a license. In that context, then, the section in our view is to be limited in its application to the discretionary acts of government which are embraced within the duty to arrive at the decisions with respect to the issuance, denial, suspension or revocation of licenses and other authorizations. This construction finds greater acceptance when consideration is given to the "Comment-1972" which follows the section:
*21 This immunity is necessitated by the almost unlimited exposure to which public entities would otherwise be subjected if they were liable for the numerous occasions on which they issue, deny, suspend or revoke permits and licenses. In addition, most actions of this type by a public entity can be challenged through an existing administrative or judicial review process. [Emphasis supplied]
In approving the comment, the Legislature made clear that it was referring in the section to the discretionary acts of government limited to the decision-making process involved in the issuance or denial of licenses and other authorizations. Hence, they provided the comment that review of these decisions was available administratively or through the courts.
While our appellate courts have not heretofore passed upon the issue here, this court has previously noted the propriety of looking to the decisions of the courts of the State of California which has in effect an immunity statute upon which our New Jersey statute was largely patterned. Keller v. Somerset Cty., 137 N.J. Super. 1 (App. Div. 1975) and Calif. Gov't Code § 810 et seq. Section 818.4 of that Code reads exactly the same as N.J.S.A. 59:2-5. That section of the California statute was construed in the case of Elson v. Public Utilities Comm'n, 51 Cal. App.3d 577, 124 Cal. Rptr. 305 (D. Ct. App. 1975). In that case a suit was started against defendant for damages for negligence of its employees. Section 818.4 was asserted as a bar to recovery. The court, after having determined that a mandatory duty rather than a discretionary duty was involved, held that:
* * * our conclusion that section 818.4 provides immunity only for discretionary activities is also consonant with the language of the statute itself. As appellant argues, a truncated version of section 818.4 would more readily lend itself to the interpretation contended by the respondent  that the section was intended to create an absolute immunity without regard to whether the agency's action was discretionary or mandatory. Thus, if the statute read as indicated by the unbracketed material in footnote 8[1], it would contain a flat *22 prohibition against liability for injuries caused by licensing activities. With the addition of the "where" clause which we have bracketed in footnote 8, a qualification is put on that absolute immunity.... But, a second element in pre-Tort Claims Act law was that acts be discretionary, since government officials were held liable for the negligent performance of their mandatory duties. (cites omitted) Respondent's argument fails to take into account that the "where" clause also recognizes and preserves this prerequisite to immunity. Thus, immunity attaches where the public entity or employee "is authorized by enactment to determine whether or not such [licensing] authorization should be issued, denied, suspended or revoked". (cites omitted) The very fact that the authority referred to in the statute gives the employee a choice demonstrates that discretion is necessarily involved.
Lastly on this issue, we note that N.J.S.A. 59:2-3(a) provides that a public entity is not liable for an injury resulting from the exercise of judgment or discretion; there follow three other subsections establishing further bases of immunity in a public entity, and the following statement concludes the section: "Nothing in this section shall exonerate a public entity for negligence arising out of acts or omissions of its employees in carrying out their ministerial functions."
We hold that N.J.S.A. 59:2-5 must be construed to apply only to the discretionary activities of government and that the appellants' claim for damages was not thereby barred because of the asserted immunity.
Respondent urges additionally that any claim asserted by appellant would be barred by the provisions of N.J.S.A. 59:3-10. That section reads: "A public employee acting in the scope of his employment is not liable for an injury caused by his misrepresentation."
It is first to be observed that this section affords protection only to an employee, but that N.J.S.A. 59:2-2(b) provides that a public entity is not liable for an injury resulting from *23 an act or omission of a public employee where the public employee is not liable.
The Comment following N.J.S.A. 59:3-10 reads:
The breadth and scope of potential negligent misrepresentation by public employees acting within the scope of their employment and the consequent exposure to unforeseen liability of the public entity necessitates this provision. Public employees are encouraged to develop and disseminate information for the benefit of the public; the absence of the above provision would undoubtedly discourage public employees from performing this necessary function to its fullest extent. [Emphasis added].
We hold that this section is intended to protect only those public employees whose positions require them to "develop and disseminate" information to the public. Obviously this section refers to the higher levels of governmental employees. It includes within its embrace only those employees engaged in discretionary activities. The section does not have the intent to protect those employees engaged in ministerial functions.
In any event, we hold that the simple act of mailing out a notice of passing or failing, as factually here involved, could not in any view be construed as a misrepresentation.
The judgment under review is reversed and the matter is remanded for trial.
MORGAN, J.A.D. (dissenting).
I agree with that portion of this court's opinion which confines the immunity afforded by N.J.S.A. 59:2-5 to discretionary acts which the public entity or employee is authorized by law to exercise. Were that section the only proffered basis for the claim of immunity, I would agree that the claim would be without merit.
I disagree, however, with that portion of the court's opinion which, in effect, rewrites N.J.S.A. 59:3-10 (affording immunity for misrepresentation) so as to limit its application to "higher levels of governmental employees" whose positions "require them to `develop and disseminate' information *24 to the public." N.J.S.A. 59:3-10 applies, very simply, to "a public employee," a term used throughout the act and which received specific definition in N.J.S.A. 59:1-3 as "an employee of a public entity." Nothing in this section, protecting a "public employee" from liability for misrepresentation, suggests that this term of designation was being used in a more limited sense. I perceive no warrant to qualify that term in this section of the Tort Claims Act simply because the commentator provided a reason for its enactment. The comment is not the statute and should not be given that effect. Had the Legislature intended to limit the protection afforded by this provision to "higher levels of governmental employees" who are "authorized to `develop and disseminate' information", it could easily have inserted language to that effect.[1]
The majority opinion tacitly assumes, without any apparent basis, that the offending public employee in this case was not authorized to disseminate information to the public. The record, however, reflects that he did at least provide some information, albeit erroneous, to plaintiff, and it may well be  indeed it is probable  that his job primarily entails sending information concerning the results of examinations, which, as I see it, constitutes dissemination of information to the public. If N.J.S.A. 59:3-10 does not apply here, it is difficult indeed to determine where it would have application. To what function and to what job would it be inapplicable? Neither the Tort Claims Act nor the majority opinion furnishes any guidance.
There is no doubt but that plaintiff seeks to visit liability upon the State for its employee's negligent misrepresentation as to the result of his examination for licensure upon *25 which he reasonably relied to his detriment. I, therefore, disagree with my colleague's conclusion that the conduct upon which the suit is based cannot be regarded as misrepresentation. In Brown v. City of Los Angeles, 267 Cal. App.2d 849, 73 Cal. Rptr. 364 (D. Ct. App. 1968), erroneous notification by city that a person's activities violated a zoning ordinance amounted to a misrepresentation within the meaning of Cal. Gov't Code § 818.8 (virtually identical to N.J.S.A. 59:3-10), and was therefore an act immune from liability. In Hirsch v. People, Dep't of Motor Vehicles, 42 Cal. App.3d 252, 115 Cal. Rptr. 452 (D. Ct. App. 1974), the public entity was held immune from liability because of its negligent issuance of certificate of ownership since such conduct constituted a misrepresentation by the entity of the true ownership of the vehicle.
The reason for this enactment can be deduced from the statement of legislative intent found in N.J.S.A. 59:1-2. It was there recognized that, unlike the private entrepreneur who can choose "the ambit of his activity, the area within which government has power to act for the public good is almost without limit * * *." It was for this reason that liability of public entities was to be more limited than that normally imposed upon private persons and, accordingly, "public entities shall only be liable for their negligence within the limitations of this act." Id. The form of the State's waiver of its immunity from suit, immunity with exceptions thereto rather than liability with exceptions, evidenced this intention to control the State's potential for liability within certain defined limits. The more expansive type of waiver, general liability with exceptions, was feared as perhaps inviting "actions brought in hopes of imposing liability on theories not yet tested in the courts [which] could result in greatly expanding the amount of litigation and the attendant expense which public entities would face." California Law Revision Commission, Recommendation Relating to Sovereign Immunity, 811 (1963).
*26 Recognizing the enormous potential for liability carried by the risk of misinformation and in light of the massive amounts of information disseminated on a daily basis on a variety of subjects of governmental concern, from every level of government and every department and division thereof, the Legislature sought to avoid any liability whatever for losses caused by the almost inevitable errors which would occur in the course of dissemination. Such losses could be fairly minor, as in this case, or catastrophic in the case of a larger enterprise. The inherent difficulty in evaluating or forecasting the magnitude of the liability for misrepresentation to be assumed and its cost to the taxpaying public probably motivated the Legislature to reject it entirely. N.J.S.A. 59:3-10 represents this policy consideration to which we should give full effect. In this context, distinctions between mandatory and discretionary functions as a test of liability or immunity are simply not germane.
That this section represents the Legislature's attempt to avoid an unpredictable volume and unforeseeable type of claims based upon negligent misrepresentation is supported by the commentator's remarks. It should be noted that two reasons for adoption of this section were given, not one. The first reason given reads as follows:
The breadth and scope of potential negligent misrepresentation by public employees acting within the scope of their employment and the consequent exposure to unforeseen liability of the public entity necessitates this provision.
From this comment several observations are in order. First, negligent, as well as intentional, misrepresentation is covered. If that is so, and there is nothing in the provision to suggest otherwise, it is difficult to discern how the discretionary dissemination of information can be negligently accomplished. There can be a bad faith exercise, or an abuse of discretion, but a negligent exercise of discretion? Secondly, it appears that one of the motivating factors for adoption of this provision was the "breadth and scope of potential negligent misrepresentation *27 by public employees." I question whether dissemination and development of information by higher level employees made in the exercise of their discretion can ever spawn the anticipated "breadth and scope" of liability for misrepresentation which motivated this section. Indeed, as previously noted, it is difficult to foresee the applicability of this provision as construed by the majority.
The second reason given by the commentator has been incorporated by the majority into the enactment itself with no attention being accorded the first reason.
I would affirm.
NOTES
[1] Footnote 8 appears in the opinion as follows:

A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization [where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked].
[1] Indeed, it did so in N.J.S.A. 59:2-5, providing immunity for the issuance of denial of licenses where it required, as a condition to immunity, that the public entity or public employee be "authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked."