JOSEPH MALLOY, PLAINTIFF-RESPONDENT, v.
STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued April 24, 1978—Decided June 8, 1978.

Mr. *George W. Fisher,* Deputy Attorney General, argued the cause for appellant (*Ms. Erminie L. Conley,* Deputy Attorney General, of counsel; *Mr. John J. Degnan,* Attorney General of New Jersey, attorney).

Mr. *Michael F. Chazkel* argued the cause for respondent (*Messrs. Chazkel & Gast,* attorneys).

The opinion of the court was delivered by

SULLIVAN, J. This suit for damages against the State of New Jersey presents the question whether plaintiff's claim is cognizable under the New Jersey Tort Claims Act or whether in the circumstances, the Act confers absolute immunity on the State.

The facts are not in dispute. On May 17, 1973, Joseph Malloy, plaintiff herein, took an examination for a real estate salesman's license. The Division of the New Jersey Real Estate Commission, Department of Insurance, is the licensing body and conducts the licensing examinations. Although plaintiff passed the examination, due to clerical error he was sent a written notice on May 23, 1973 that he had failed. It was not until August 1974 that he was notified of the error and of the fact that he had actually passed the examination. This suit for damages followed.

After issue was joined, cross-motions for summary judgment were made and argued. The trial judge denied plaintiff's motion and granted defendant's motion. He noted that plaintiff was not claiming fraud, bad faith or malice, but merely negligence or mistake. See *N. J. S. A.* 59:2–10. He interpreted *N. J. S. A.* 59:2–5, a section of the Tort Claims Act dealing with licensing, to confer immunity on the public entity in the situation here presented.

The statutory section relied on by the trial judge provides as follows:

A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity or public employee is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked.

The Appellate Division, in a majority opinion reported at 148 *N. J. Super.* 15 (1977), reversed. It held that plaintiff's motion for summary judgment had been properly denied since the record did not support a determination of negligence on defendant's part as a matter of law. However, it held that the immunity conferred on a licensing body by *N. J. S. A.* 59:2–5 extended only to its discretionary acts and did not apply to a ministerial act by an employee, such as was here involved.

The majority opinion also rejected defendant's additional contention that plaintiff was barred from maintaining suit by another section of the Act, *N. J. S. A.* 59:3–10, which states:

A public employee acting in the scope of his employment is not liable for an injury caused by his misrepresentation.

While this section protects only the employee, a companion provision, *N. J. S. A.* 59:2–2(b), reads:

b. A public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable.

The Appellate Division majority held that Section 10 also applied only to the higher levels of government employees engaged in discretionary activities and was not intended to protect those employees engaged in ministerial functions. The majority additionally held that, in any event, the simple

act of mailing the wrong notice to plaintiff could not, in any view, be construed as a misrepresentation. The majority opinion, therefore, reversed the summary judgment in favor of defendant and remanded the matter for trial.

The dissenting judge, while agreeing that *N. J. S. A.* 59: 2–5 did not confer immunity on the State for the ministerial act here involved, concluded that the mailing of the wrong notice to plaintiff was a misrepresentation within the meaning of *N. J. S. A.* 59:3–10 for which the employee was not liable in tort and for which the State would not be liable under *N. J. S. A.* 59:2–2(b). Therefore, the dissenting judge voted to affirm the summary judgment in favor of defendant. By virtue of the dissent in the Appellate Division, the State has appealed to the Supreme Court as of right, *R.* 2:2–1(a)(2). We reverse and reinstate the summary judgment in favor of defendant.

Historically, the State of New Jersey, as did most other states, enjoyed complete sovereign immunity in tort actions. However, the doctrine was severely criticized because of its unfairness and there has been a steady movement away from it by judicial decision and statute. See for example, *Muskopf v. Corning Hosp. Dist.,* 55 *Cal.* 2d 211, 11 *Cal. Rptr.* 89, 359 *P.* 2d 457 (Sup. Ct. 1961). In April 1970, this Court, in *Willis v. Dept. of Cons., & Ec. Dev.,* 55 *N. J.* 534, abrogated sovereign immunity in this State as to tort claims but made its ruling applicable only to tort claims arising on or after January 1, 1971 in order to afford the Legislature the opportunity to fix the dimensions of State tort liability. *Willis, supra* at 541.

The legislative response was the New Jersey Tort Claims Act, *N. J. S. A.* 59:1–1 *et seq.,* enacted in 1972. The Act by its terms applies to all public entities. *N. J. S. A.* 59:1–2 declares it

\* \* \* to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established

herein. All of the provisions of this act should be construed with a view to carry out the above legislative declaration.

Another section in Chapter 2 of the Act, *N. J. S. A.* 59: 2–1, provides:

a. Except as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.

b. Any liability of a public entity established by this act is subject to any immunity of the public entity and is subject to any defenses that would be available to the public entity if it were a private person.

The comment[1] to Subsection (a) states that the basic statutory approach of the New Jersey Tort Claims Act is that the immunity of governmental bodies in New Jersey is reestablished except where there is a statutory declaration of liability. The comment adds that Subsection (b) is intended to insure that any immunity provided in the act or by common law will prevail over the liability provisions and that it is anticipated that the courts will realistically interpret both the statutory and common law immunities in order to effectuate their intended scope.

One of the immunities set forth in the act is contained in *N. J. S. A.* 59:2–5 which, although quoted in an earlier part of this opinion, bears repetition. It provides:

A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity or public employee is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked.

The Comment to this section is as follows:

---

[1]The comments referred to in this opinion are from the *Report of the Attorney General's Task Force on Sovereign Immunity — May 1972* which drafted the New Jersey Tort Claims Act.

This immunity is necessitated by the almost unlimited exposure to which public entities would otherwise be subjected if they were liable for the numerous occasions on which they issue, deny, suspend or revoke permits and licenses. In addition, most actions of this type by a public entity can be challenged through an existing administrative or judicial review process. (Citations of cases omitted.)

■ We are satisfied that the immunity granted is pervasive and applies to all phases of the licensing function, whether the governmental acts be classified as discretionary or ministerial. We understand the requirement that the public entity be "authorized by law to determine" whether a license, etc. be issued, denied, suspended or revoked, to serve only to identify the public entity to whom the immunity extends and not to limit such immunity to the decision-making process.

If its meaning were limited to discretionary governmental acts, the entire provision would be surplusage, as a preceding section of the act immunizes a public entity from liability for discretionary activities. It provides:

a. A public entity is not liable for an injury resulting from the exercise of judgment or discretion vested in the entity;

Our attention is directed to subparagraph (d) of *N. J. S. A.* 59:2–3 which contains the following:

* * * Nothing in this section shall exonerate a public entity for negligence arising out of acts or omission of its employees in carrying out their ministerial functions.

We recognize that, ordinarily, under the act a public entity or its employee is liable for negligence in the performance of a ministerial duty. See *N. J. S. A.* 59:2–2. However, *N. J. S. A.* 59:2–1(b), quoted above, provides that any liability of a public entity under the act is subject to any immunity provided by the act. The comment to this subsection also heretofore quoted, states that it "is intended to insure that any immunity provisions in the act or by com-

mon law *will prevail* over the liability provisions." (emphasis added).

The construction we place upon *N. J. S. A.* 59:2–5 carries out the legislative purpose. Licensing activity is a vital exercise of governmental authority. In this State there are literally millions of licenses, certificates, permits and the like applied for, issued, renewed or denied. It is inevitable that with such a staggering volume of activity, mistakes, both judgmental and ministerial, will be made. The purpose of the immunity is to protect the licensing function and permit it to operate free from possible harassment and the threat of tort liability. On this basis, it would make little sense to immunize judgmental mistakes from liability but not others. Of course, judicial review of the administrative action is always available. *R.* 4:69.

The Appellate Division in finding that the immunity conferred by *N. J. S. A.* 59:2–5 applied only to discretionary acts of government, relied to a large extent on the decision in *Elson v. Public Utilities Comm.,* 51 *Cal. App.* 3d 577, 124 *Cal. Rptr.* 305 (Ct. App. 1975). The court in that case construed a California statutory provision, the language of which is identical with *N. J. S. A.* 59:2–5, and held that the immunity conferred thereby pertained only to discretionary activities and did not protect against failure to discharge a mandatory duty. The California Supreme Court has since upheld this construction. See *Morris v. County of Marin,* 18 *Cal.* 3d 901, 136 *Cal. Rptr.* 251, 559 *P.* 2d 606 (1977).

To the extent that it is contrary to our interpretation of the statute, we disagree with the rationale of the California decisions. We find in the New Jersey Tort Claims Act a clear expression of legislative intent that the licensing function, as defined, be immune from tort liability for negligence or mistake, whether the act involved be discretionary or ministerial.

Our conclusion is that the immunity provided by *N. J. S. A.* 59:2–5 extends to the situation here presented

and that the trial judge was correct in granting defendant's motion for summary judgment.[2]

In view of the foregoing disposition, it is unnecessary to consider the interpretation and application of the immunity provision contained in *N. J. S. A.* 59:3–10 on which the Appellate Division was in disagreement.

Reversed.

*For reversal*—Chief Justice HUGHES and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER and Judge CONFORD—7.

*For affirmance*—None.

[2]Although plaintiff has not raised the point, we note that the Appellate Division was unanimous in its interpretation of *N. J. S. A.* 59:2–5. Some question may exist, therefore, as to whether the appeal as of right encompasses this issue. See *State v. Garfole*, 76 *N. J.* 445 (1978). In any event, we have addressed the question because of its importance.