282 N.J. Super. 447 (1995)
660 A.2d 558
BETTY SIMON, TRUSTEE, J.D.T., RICHARD SIMON, GRANTOR DATED MARCH 2, 1970, PLAINTIFF-RESPONDENT,
v.
NATIONAL COMMUNITY BANK OF NEW JERSEY, DEFENDANT/THIRD PARTY PLAINTIFF/APPELLANT/CROSS-RESPONDENT,
v.
TOWNSHIP OF EGG HARBOR AND JANE DOE, AN UNKNOWN AUTHORIZED AGENT OF EGG HARBOR TOWNSHIP, THIRD PARTY DEFENDANT-RESPONDENT/CROSS-APPELLANT. AND MARTLAND HOSPITAL, EUGENE DAVOLOS AND ANNE M. DAVOLOS, HIS WIFE, A PARTNERSHIP T/A ELSEA PARTNERSHIP; AT & T CREDIT CORP., GENERAL ELECTRIC CORP.; FOREST CITY RESIDENTIAL DEVELOPMENT, INC., (FORMERLY FOREST CITY DILLON, INC.), STATE OF NEW JERSEY; DANIEL S. FALASCO PLUMBING, HEATING & COOLING, INC.; BEST WESTERN INTERNATIONAL, INC., JOHN L. GROSSMAN, JOHN D. PHELPS, JR.; UNKNOWN OTHERS/UNKNOWN CLAIMANTS, THEIR HEIRS, DEVISEES AND THEIR SUCCESSORS IN RIGHT, TITLE AND INTEREST, DEFENDANTS. TICOR TITLE INSURANCE COMPANY AND TITLE COMPANY OF NEW JERSEY, PLAINTIFFS-APPELLANTS/CROSS-RESPONDENTS,
v.
TOWNSHIP OF EGG HARBOR, JANE DOE, AN UNKNOWN AUTHORIZED AGENT OF EGG HARBOR TOWNSHIP AND BETTY SIMON, DEFENDANTS-RESPONDENTS/CROSS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 26, 1994.
Decided July 6, 1995.
*449 Before KING, D'ANNUNZIO and EICHEN, JJ.
Barbara Ayars argued the cause for appellants/third party plaintiff/cross-respondents (Horn, Goldberg, Gorny, Daniels, Paarz, Plackter & Weiss, attorneys; Mark Soifer, attorney of record; Ms. Ayars, on the brief).
Keith A. Bonchi argued the cause for respondent (Goldenberg, Mackler & Sayegh, attorneys; Mr. Bonchi, on the brief).
Marc Friedman argued the cause for respondent/cross-appellant (Schreiber & Friedman, P.C., attorneys; Mr. Friedman, on the brief).
The opinion of the court was delivered by EICHEN, J.S.C. (temporarily assigned).
These consolidated cases arose as a result of erroneous telephonic information conveyed by an unidentified clerical employee in the tax collector's office of Egg Harbor Township (Egg Harbor) concerning the tax lien status of certain commercial property. The information was given to a title company representative during a second mortgage loan closing between a bank and the owner of the commercial property.

*450 I.
The following facts are relevant to this appeal. On February 1, 1988, National Community Bank (NCB) made a $2,500,000 second mortgage loan to G & M Land Associates (G & M) for a Sheraton Hotel property in Egg Harbor. Title Company of Jersey, an agent authorized to write title insurance policies on behalf of Ticor Title Insurance Company (collectively, the title company), through its representative, an assistant vice president, Sally Oshman (Oshman), telephoned the tax collector's office of Egg Harbor prior to the loan closing to request information concerning any delinquent taxes or additional assessments relating to the property. According to Oshman's affidavit an unidentified person at the tax collector's office mistakenly informed her that the total outstanding 1987 and 1988 taxes, including additional assessments, were in the amount of $23,753, when, in fact, additional assessments in the amount of $105,708 were still open and unpaid. It is undisputed the mistaken information was not conveyed intentionally or in bad faith. Oshman claims she issued the title policy without "tax exceptions" in reliance on the erroneous telephonic tax lien status advice. Neither the bank nor the title company ordered a formal tax lien search prior to closing the loan.
NCB and the title company sued Egg Harbor and plaintiff claiming Egg Harbor negligently disseminated tax information to them for which they are liable. The parties cross-claimed, counter-claimed and filed third party actions against each other and, after considerable procedural jousting, the judge granted Egg Harbor's and plaintiff's motions for summary judgment.
The motion judge found Egg Harbor was not liable to the title company or NCB because they had failed to follow the statutory scheme enacted by the Legislature in the Tax Sale Law, specifically, N.J.S.A. 54:5-11 to -18, (the Tax Sale Law), which enables interested parties to make written requests for an official search of municipal tax liens. The judge concluded compliance with the statutory scheme is the exclusive method of acquiring protection from mistakes made by the tax collector's office.
*451 The title company and NCB (appellants) appeal. Egg Harbor filed a cross-appeal. Appellants contend the motion judge erred in granting summary judgment in favor of Egg Harbor and plaintiff. Appellants argue they relied to their detriment on the oral tax lien status advice; that Egg Harbor's practice was to routinely disseminate such tax information over the telephone; and that Egg Harbor should be held accountable for its negligent misrepresentation under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 12-3 (the Tort Claims Act). Appellants argue the judge erred in ruling that because appellants failed to formally request an official tax search under the Tax Sale Law, Egg Harbor cannot be held liable for negligence under the Tort Claims Act for misrepresenting the tax lien status of the property over the telephone. Appellants' theory is that because Egg Harbor itself did not follow the formal procedures set forth in the Tax Sale Law, that statutory scheme is inapplicable, and Egg Harbor's actions must be viewed solely in the context of the Tort Claims Act. They maintain that, under the Tort Claims Act, Egg Harbor is liable for its clerk's negligent performance of the "ministerial" function of disseminating tax information over the telephone. Appellants contend the two statutes are in pari materia and should be read together and harmonized so that the Tort Claims Act is not canceled out by the Tax Sale Law.
Plaintiff and Egg Harbor contend the judge correctly held that the purpose of the Tax Sale Law would be undermined if Egg Harbor were made responsible for the innocent misrepresentation of a clerical employee and that the Tax Sale Law should not be read in pari materia to hold the township liable for the alleged negligence of its employee in failing to accurately disseminate the requested tax information.
We agree the Tort Claims Act should be examined in analyzing appellants' claim against Egg Harbor, but conclude, for the reasons discussed later in this opinion, that the act specifically immunizes Egg Harbor for the innocent misrepresentation of its employee. Whether the Tax Sale Law provisions governing tax *452 searches are considered alone or in relation to the Tort Claims Act, we are satisfied appellants may not recover from Egg Harbor for the innocent misrepresentations of a municipal employee over the telephone as to the tax and assessment lien status of the property and that the Tax Sale Law provides the exclusive remedy for recovering losses sustained due to municipal errors in reporting the tax lien status of real property.
Further, in the absence of disputed issues of material fact, the judge properly granted summary judgment in favor of Egg Harbor and plaintiff. This is so, even accepting appellants' allegations of negligence and detrimental reliance as true and granting them all favorable inferences; they nevertheless have not made out a valid claim against Egg Harbor or plaintiff. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75, 110 A.2d 24 (1954). Accordingly, we affirm the summary judgments.

II.
The official search provisions of the Tax Sale Law require that the governing body of a municipality designate a bonded official to be responsible for examining municipal records for unpaid municipal liens and certifying the results of such searches. N.J.S.A. 54:5-12. Within fifteen days of receiving a written application and fee requesting such a search, the official is mandated to issue a certificate certifying the taxes, assessments or other municipal charges levied or assessed against the property described in the application. Id. The certificate must include all municipal liens and outstanding tax sale certificates and shall further specify whether the property has, within the three years last past, been assessed under the Farmland Assessment Act. N.J.S.A. 54:5-13.
The legislative intent underlying these sections is to provide for a certification of the "existence or absence of outstanding municipal liens prior to the consummation of a real property transaction," so the prospective purchaser can proceed with safety. Cliffside Park Mortgage Co. v. Englewood, 113 N.J. Eq. 146, 149, *453 166 A. 36 (Ch. 1933), aff'd o.b., 115 N.J. Eq. 289, 170 A. 646 (E. & A. 1934) ("The legislative purpose in enacting the legislation in question was to protect investors, either grantees or mortgagees of real estate by providing for a certificate as to tax and assessment liens on which they can safely act....") See also Commonwealth Water Co. v. Bernards Tp., 3 N.J. Tax 428, 433 (Tax 1981); Belles v. East Amwell Tp., 2 N.J. Tax 103, 111, 178 N.J. Super. 63, 427 A.2d 1144 (Tax 1981); Go-Lit Realty Co. v. Jersey City, 120 N.J.L. 592, 592, 1 A.2d 262 (Sup.Ct. 1938). N.J.S.A. 54:5-17 states that:
A bona fide purchaser, lessee or mortgagee who shall acquire for valuable consideration an interest in lands covered by an official tax search and in reliance on said search shall hold such interest free from any municipal lien and any outstanding certificate of tax sale held by the municipality and any outstanding certificate of tax sale not held by the municipality and not yet recorded within the three months period from date of sale allowed by section 54:5-51 of the Revised Statutes and not shown on that search, and it shall be the duty of the municipality to obtain at its own cost and expense the discharge of any such outstanding certificate of tax sale not held by the municipality not shown on that search.
Thus, this section protects a mortgagee who follows the prescribed procedure from tax liens not uncovered during an official search of the municipal records.
Similarly, N.J.S.A. 54:5-18 provides that where the designated municipal official fails to issue the tax search within the fifteen-day timeline, a person acquiring an interest in the lands described in the application holds the lands free from any municipal liens existing and held by the municipality on the date of the tax search application. These provisions set forth the boundaries of the duty owed by a municipality in the preparation and issuance of a certificate reflecting the results of its tax and assessment search of its records for unpaid municipal liens. In the event of a breach of that duty, the municipality becomes responsible to a person who, in reliance on the certificate, acquires an interest in the property. Cliffside Park Mortgage Co., supra, 113 N.J. Eq. at 149, 166 A. 36.
Reading these provisions in isolation, arguably, we could conclude that by establishing a clearcut and comprehensive system *454 for requesting official tax searches, the Legislature intended strict adherence to those statutory procedures before a municipality may be held liable for the results of an inaccurate search and, therefore, resort to the Tort Claims Act is not necessary to our analysis. Prior to the passage of the Tort Claims Act, an individual or entity had to come within the precise scope of the above sections in order to recover from a municipality for the conduct of a tax search. See U.S. Mortgage Title & Guaranty Co. v. Teaneck Twp., 128 N.J.L. 114, 116, 24 A.2d 201 (E. & A. 1942) (plaintiff did not come within protection of R.S. 54:5-17, the predecessor to N.J.S.A. 54:5-17, because unreported lien was not held by municipality and plaintiff title insurance company did not have an interest in the land covered by the search). However, in the absence of clear legislative guidance instructing the inapplicability of the Tort Claims Act to error committed by a tax collector's office outside the statutory scheme, we address appellants' claims under the act.
The Tort Claims Act was passed in 1972 in response to the judiciary's weakening of the doctrine of sovereign immunity. Manna v. State, 129 N.J. 341, 346, 609 A.2d 757 (1992); Rochinsky v. State of N.J. Dept. of Transp., 110 N.J. 399, 404, 541 A.2d 1029 (1988). "Immunity is the dominant consideration of the Act." Kolitch v. Lindedahl, 100 N.J. 485, 498, 497 A.2d 183 (1985); see Manna, supra, 129 N.J. at 347, 609 A.2d 757; see also Rochinsky, supra, 110 N.J. at 408, 541 A.2d 1029. Thus, N.J.S.A. 59:2-1(a) specifies that "[e]xcept as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee...." Further, "[a]ny liability of a public entity established by the act is subject to any immunity of the public entity and is subject to any defenses that would be available to the public entity if it were a private person." N.J.S.A. 59:2-1(b). "[E]ven common-law and statutory immunities not contained in the Act can prevail over the Act's liability provisions." Rochinsky, supra, 110 N.J. at 409, 541 A.2d 1029. Further, "when one of the Act's provisions establishes *455 liability, that liability is ordinarily negated if the public entity possesses a corresponding immunity." Id. at 408, 541 A.2d 1029; accord Tice v. Cramer, 133 N.J. 347, 355, 627 A.2d 1090 (1993).
The animating rationale of the Tort Claims Act is that limiting liability to specific statutorily-designated areas will enable public entities to foresee and plan for the costs of any future liability. Manna, supra, 129 N.J. at 346, 609 A.2d 757. (Consider e.g., statutory bonding requirements for official responsible for certifying tax search certificates.)
There are three principal liability sections in the Act, only two of which are applicable here. N.J.S.A. 59:2-2 incorporates the doctrine of respondeat superior, Rochinsky, supra, 110 N.J. at 409, 541 A.2d 1029, and provides that "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." N.J.S.A. 59:4-2, not pertinent to this matter, deals with the liability of a public entity for dangerous conditions on its property. The third liability section, N.J.S.A. 59:2-3, contains both immunity and liability provisions and generally immunizes the decision-making process of public entities by exempting them from liability for the exercise of discretion or judgment.
Appellants emphasize the exception to immunity for ministerial acts found in N.J.S.A. 59:2-3(d), which provides in pertinent part:
Nothing in this section shall exonerate a public entity for negligence arising out of acts or omissions of its employees in carrying out their ministerial function.
Appellants invoke this provision to support their claim of liability against Egg Harbor for the "ministerial" act of a clerical employee in providing erroneous telephone information on outstanding taxes. However, the labelling of a particular activity as "ministerial" does not automatically divest a public entity of its immune status because "[s]everal immunities have been found to cover ministerial as well as discretionary acts." Rochinsky, supra, 110 N.J. at 412, 541 A.2d 1029.
*456 For the reasons we now discuss, we conclude this principle pertains to N.J.S.A. 59:3-10. That section provides that "[a] public employee acting in the scope of his employment is not liable for an injury caused by his misrepresentation." The Attorney General's Task Force on Sovereign Immunity Report, which accompanied N.J.S.A. 59:3-10, reinforces our view that this section grants immunity for both ministerial and discretionary acts. The comments in the Report state:
The breadth and scope of potential negligent misrepresentation by public employees acting within the scope of their employment and the consequent exposure to unforeseen liability of the public entity necessitates this provision. Public employees are encouraged to develop and disseminate information for the benefit of the public; the absence of the above provision would undoubtedly discourage public employees from performing this necessary function to its fullest extent.
[Margolis and Novack, Claims Against Public Entities, 1972 Task Force Comment on N.J.S.A. 59:3-10 (1994).]
Like all employee immunities, N.J.S.A. 59:3-10 is limited by the requirement that the misrepresentation be made without actual malice or actual fraud, neither of which is alleged here. N.J.S.A. 59:3-14. Further, while N.J.S.A. 59:3-10 applies only to public employees, a public entity is not liable for an act or omission of a public employee where the public employee is not liable. N.J.S.A. 59:2-2(b). Malloy v. State, 148 N.J. Super. 15, 371 A.2d 806 (App.Div. 1977), rev'd 76 N.J. 515, 388 A.2d 622 (1978), is the only decision construing this section and, while it held that N.J.S.A. 59:3-10 did not provide immunity for the governmental entity, we are persuaded that the Supreme Court's reversal on a related point weighs in favor of giving the section effect in this case.
In Malloy, the plaintiff sued the Department of Insurance for damages after it sent him an erroneous notice that he had failed a real estate licensing examination. It did not notify him that he had in fact passed the test until more than one year later. The trial court granted summary judgment in favor of the State, finding that it was immune from suit under N.J.S.A. 59:2-5, granting immunity for an injury caused by the issuance, denial, suspension or revocation of any permit, license, or certificate or by *457 the failure to make such a licensing decision. Id. at 517, 388 A.2d 622.
This court reversed, reasoning that the immunity pertained only to discretionary acts involved in the licensing process, not a ministerial action such as the mailing of an erroneous notice. Malloy, supra, 148 N.J. Super. at 20-22, 371 A.2d 806. This court also rejected, over a strong dissent by Judge Morgan, the State's argument that N.J.S.A. 59:3-10 exempted it from liability. Id. at 22-23, 371 A.2d 806. We held then that this section applied only to discretionary activities and, further, found that the simple act of mailing out a notice of passing or failing an examination could not be construed as a misrepresentation. Id. at 22, 371 A.2d 806.
The Supreme Court sharply disagreed with this court's view of the scope of N.J.S.A. 59:2-5 concluding that the legislative intent was to immunize the licensing function from tort liability for negligence or mistake, whether the act involved was discretionary or ministerial. Malloy, supra, 76 N.J. at 521, 388 A.2d 622. The Supreme Court reasoned that, with millions of licenses and permits issued and applied for, it was inevitable that both judgmental and ministerial mistakes would be made given this "staggering volume of activity." Ibid. It observed that, given the legislative intent to permit the licensing function to operate free from possible harassment and the threat of tort liability, it made little sense to distinguish between discretionary and ministerial actions. Ibid. While the Supreme Court did not address this court's treatment of N.J.S.A. 59:3-10, commentators have observed that the conclusion that the immunity contained in N.J.S.A. 59:2-5 encompasses both discretionary and ministerial actions applies equally to N.J.S.A. 59:3-10. See Margolis and Novack, Claims Against Public Entities, comment on N.J.S.A. 59:3-10 (1994).
We believe there is a congruence between the Supreme Court's concern for the consequences of imposing liability for millions of ministerial licensing actions and the comment following N.J.S.A. 59:3-10 concerning the floodgates which would be opened should negligent misrepresentations subject a public employee or a public *458 entity to liability. Thus, the comment supports the view that a negligent misrepresentation made in the context of a ministerial action should not subject a public entity to liability.
In this vein, the dissent in Malloy, supra, 148 N.J. Super. at 26, 371 A.2d 806, observed that the purpose for the section was to staunch the
enormous potential for liability carried by the risk of misinformation and in light of the massive amounts of information disseminated on a daily basis on a variety of subjects of governmental concern, from every level of government and every department and division thereof, the Legislature sought to avoid any liability whatever for losses caused by the almost inevitable errors which would occur in the course of dissemination. Such losses could be fairly minor, as in this case, or catastrophic in the case of a larger enterprise. The inherent difficulty in evaluating or forecasting the magnitude of the liability for misrepresentation to be assumed and its cost to the taxpaying public probably motivated the Legislature to reject it entirely. N.J.S.A. 59:3-10 represents this policy consideration to which we should give full effect. In this context, distinctions between mandatory and discriminatory functions as a test of liability or immunity are simply not germane.
That this section represents the Legislature's attempt to avoid an unpredictable volume and unforeseeable type of claims based upon negligent misrepresentation is supported by the commentator's remarks....
Finally, the dissent also noted that there was no reason to limit the immunity to high-level employees engaged in discretionary decision-making, when the section used the term "public employee." Id. at 24, 371 A.2d 806. We agree with the rationale in the Malloy dissent and apply the immunity of N.J.S.A. 59:3-10 to exonerate the municipality for the misrepresentation made in this case.
When we read the Tax Sale Law provisions together with those of the Tort Claims Act, we perceive a legislative effort toward circumscribing a municipality's liability for innocent misrepresentations, here the mistaken dissemination of erroneous tax information to a title company during an informal telephone inquiry. "[T]he Tort Claims Act is a comprehensive immunity statute[,]," Tontodonati v. City of Paterson, 229 N.J. Super. 475, 481, 551 A.2d 1046 (App.Div.), certif. denied, 117 N.J. 35, 563 A.2d 808 (1989), and in support of that concept, the Attorney General's Task Force *459 on Sovereign Immunity Report accompanying N.J.S.A. 59:2-1 states:
[t]he approach should be whether an immunity applies and if not, should liability attach. It is hoped that in utilizing this approach the courts will exercise restraint in the acceptance of novel causes of action against public entities.
[Margolis and Novack, Claims Against Public Entities, 1972 Task Force Comment on N.J.S.A. 59:2-1 (1994).]
In sum, Egg Harbor is immune from liability for the innocent misrepresentation made by the unidentified clerical employee of the township tax collector's office under N.J.S.A. 59:3-10. We hold that section does not expressly limit its immunity to discretionary acts, but includes ministerial acts as well in the context of this case. In our view, the lack of a remedy under the Tort Claims Act is not a harsh result in light of the adequate protection provided by the comprehensive statutory scheme found in N.J.S.A. 54:5-11 to -18 which, we conclude, is the exclusive means of determining a municipality's responsibility for erroneously reporting the tax lien status of property. Egg Harbor's duty of care in reporting tax lien information, in the absence of fraud or malice, arises solely under the Tax Sale Law and breach of that duty must find its remedy in adhering to the requirements of that act. Appellants are a title company and a commercial bank, presumably sophisticated in real estate title matters. By choosing to obtain tax lien information by telephone, they impliedly indicated their willingness to accept the risk that the information imparted might be erroneous. That innocent misrepresentations may occur is a foreseeable consequence of the municipality's gratuitous undertaking. We perceive that undertaking as being in the nature of an accommodation or courtesy to the public, which should not expose a municipality to unlimited liability. Thus, appellants cannot recover their losses even if they relied on such an undertaking.
We affirm the grant of summary judgment in favor of Egg Harbor and plaintiff. We need not decide the cross-appeal which we dismiss as moot.
*460 D'ANNUNZIO, J.A.D., (concurring).
I concur in the result on the ground that the procedures and remedies contained in N.J.S.A. 54:5-11 to -18 are exclusive and are not superseded by the Tort Claims Act.