[Civ. No. 45069. Second Dist., Div. Three. Sept. 23, 1975.]

JOSEPH ELSON, Plaintiff and Appellant, v.
PUBLIC UTILITIES COMMISSION, Defendant and Respondent.

578

**COUNSEL**

Martin N. Daniel for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and N. B. Peek, Deputy Attorney General, for Defendant and Respondent.

## OPINION

COLE (J. L.), J.*—This matter primarily concerns the relationship between sections 815.6 and 818.4 of the Government Code.[1]

The former provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

The latter states: "A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked."

The issue is posed here on account of the following facts alleged in an amended complaint. Appellant Joseph Elson recovered a judgment for personal injuries sustained when struck by a passenger stage operated by the Blue and White Bus Company of Watts, Inc. A general order of respondent Public Utilities Commission of the State of California, in effect at the time of the accident in which appellant was injured, required Blue and White to maintain liability insurance in force. It had none in effect at the time of the accident. Defendants (the state and the Public Utilities Commission) knew that Blue and White was conducting its passenger bus business with no liability insurance in effect. Blue and White had no assets with which to satisfy the judgment. The amended complaint charges that defendants negligently failed to revoke Blue and White's operating authority and that they had a mandatory obligation to do so.

A demurrer to the amended complaint was sustained without leave to amend, the trial court citing section 818.4 as authority for its ruling.

*Assigned by the Chairman of the Judicial Council.
[1]All section references herein are to that code, unless otherwise specified.

The appeal is from the order of dismissal which ensued.[2]

The Public Utilities Commission's order (General Order No. 101-C) first states that each passenger stage corporation shall provide liability insurance or a specified substitute therefor and continue it in effect so long as the corporation conducts its operations. The order further provides that the cancellation or suspension of the insurance or any of the authorized substitutes "shall constitute good cause for suspension or revocation of the operating authority of the affected passenger stage corporation. No operation shall be conducted on any highway of the State of California unless a certificate of insurance [or one of the authorized substitutes] shall be in effect and on file with the Commission."

■ Appellant's first point is that the quoted language of the general order imposes a mandatory duty on the commission within the meaning of section 815.6.

Respondent states that it regards the point to be immaterial in light of its view that even if the general order of the commission created a mandatory duty otherwise subject to section 815.6, immunity existed under section 818.4.

It is clear to us that a mandatory duty was involved. The commission is authorized to make rules and to do everything necessary to carry out the jurisdiction conferred upon it. (Const., art. XII, § 6 [formerly art. XII, § 23]; Pub. Util. Code, § 701.) Violations of the commission rules are, by statute, declared to be misdemeanors. (Pub. Util. Code, § 2107 et seq.) The Public Utilities Code requires that the commission *shall* see that the provisions of the Constitution and the statutes affecting public utilities are enforced and that violations are promptly prosecuted. (Pub. Util. Code, § 2101.) The Public Utilities Code also provides that whenever the commission is of the opinion that any public utility[3] is failing or appears to fail to abide by one of its rules the commission *shall* direct that an

---

[2]In the trial court the State of California and the Public Utilities Commission were separately named as defendants and separately demurred. The order of dismissal dismissed both defendants. In this court respondent designates itself in the singular as "Public Utilities Commission of the State of California." The commission is a state agency; no different result flows from treating defendants as singular rather than plural and appellant makes no point of the difference between the trial and appellate positions. Accordingly, we refer to respondent in the singular throughout this opinion.

[3]A passenger stage corporation is a common carrier (Pub. Util. Code, § 211, subd. (c)) and hence is a public utility (Pub. Util. Code, § 216, subd. (a)).

appropriate action be commenced to prevent the violation. As used in the Public Utilities Code, the word "shall" is mandatory. (Pub. Util. Code, § 14.) Therefore, when Blue and White operated without insurance it was in violation of a statute and the commission had a mandatory duty to prevent that violation.

This brings us, then, to the principal question discussed above: What is the relationship between section 815.6 and section 818.4 of the Government Code? As section 815.6 states, it fixes liability upon a public entity for the latter's failure to perform a mandatory duty imposed by an enactment when the enactment is designed to protect against the risk of a particular kind of injury, and the injury is proximately caused by the failure to perform the duty.[4]

The question then is whether the liability imposed by section 815.6 is taken away, in the context of this case, by the immunity given to licensing decisions by section 818.4. We hold that it is not and that the respondent may be held liable. An understanding of the legislative and judicial backgrounds of the sections shows why this is so.

Each of these sections is a part of the 1963 legislation (Stats. 1963, ch. 1681) popularly called the California Tort Claims Act. (Van Alstyne, Cal. Government Tort Liability (Cont. Ed. Bar 1964) p. 4.) The statute was enacted as a response to the twin decisions of *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457] and *Lipman* v. *Brisbane Elementary Sch. Dist.* (1961) 55 Cal.2d 224 [11 Cal.Rptr. 97, 359 P.2d 465]. (4 Cal. Law Revision Com. Rep. p. 807 [hereafter "Recommendations"].) In *Muskopf* the Supreme Court held that the doctrine of sovereign immunity was no longer available to protect public entities from liability. In *Lipman* the court stated, in dictum, that public entities might under certain circumstances be liable for acts of their employees even though the doctrine of discretionary immunity protected the latter. (55 Cal.2d at pp. 229-230; Recommendations, p. 807.)

Prior to the decisions in *Muskopf* and *Lipman* governmental entities were generally immune from liability for acts undertaken in a govern-

---

[4]General Order No. 101-C is an enactment (§§ 810.6 and 811.6). There is no question that Blue and White's failure to have insurance is a risk of the very kind of injury sustained by appellant—that a party injured by a passenger stage corporation and recovering judgment against it might be unable to recover that judgment in the absence of insurance.

mental capacity. (*Talley* v. *Northern San Diego County Hosp. Dist.* (1953) 41 Cal.2d 33, 36 [257 P.2d 22].) The doctrine of sovereign immunity had become so riddled with exceptions and inconsistencies that in *Muskopf* the court swept it entirely aside, declaring "that it must be discarded as mistaken and unjust." (55 Cal.2d at p. 213.)

The sovereign immunity abolished in *Muskopf* was based on grounds entirely different from those relied upon for immunizing employees from *discretionary* acts undertaken within the scope of their authority. (*Muskopf* at p. 221; *Shakespeare* v. *City of Pasadena* (1964) 230 Cal.App.2d 375 at pp. 382, 383 [40 Cal.Rptr. 863].)

*Muskopf* did not affect "the settled rules of immunity of government officials for acts within the scope of their authority. . . . ¶ Government officials are liable for the negligent performance of their ministerial duties [citation omitted] but are not liable for their discretionary acts within the scope of their authority [citations omitted], even if it is alleged that they acted maliciously [citations omitted]." (55 Cal.2d at p. 220.) The court explained the basis for the immunity of individual employees as follows: "Such immunity is not designed to protect the guilty, for 'if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties . . . . In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.' (Learned Hand, J. in *Gregoire* v. *Biddle*, 177 F.2d 579, 581; see also *Hardy* v. *Vial*, 48 Cal.2d 577, 582-583 [311 P.2d 494].)" (*Muskopf, supra,* 55 Cal.2d at p. 221).

In *Lipman* v. *Brisbane Elementary Sch. Dist., supra,* 55 Cal.2d 224, 229-230, the court opined that public agencies might, under some circumstances, be held liable even though its employees could claim an immunity based upon the discretionary nature of their acts. The court said:

" . . . [I]t does not necessarily follow that a public body has no immunity where the discretionary conduct of governmental officials is involved. While, as pointed out in the *Muskopf* case, a governmental

agent is personally liable for torts which he commits when acting in a ministerial capacity, a different situation exists with respect to discretionary conduct. Because of important policy considerations, the rule has become established that government officials are not personally liable for their discretionary acts within the scope of their authority even though it is alleged that their conduct was malicious. (*Hardy* v. *Vial,* 48 Cal.2d 577, 582-584 [311 P.2d 494]; *Coverstone* v. *Davies,* 38 Cal.2d 315, 322 [239 P.2d 876]; *White* v. *Towers,* 37 Cal.2d 727, 730-732 [235 P.2d 209, 28 A.L.R.2d 636]; see *Barr* v. *Matteo,* 360 U.S. 564, 569 et seq. [79 S.Ct. 1335, 3 L.Ed.2d 1434].) The subjection of officials, the innocent as well as the guilty, to the burden of a trial and to the danger of its outcome would impair their zeal in the performance of their functions, and it is better to leave the injury unredressed than to subject honest officials to the constant dread of retaliation. (*Hardy* v. *Vial,* 48 Cal.2d 577, 582-583 [311 P.2d 494].)

"The immunity of the agency from liability for discretionary conduct of its officials, however, is not coextensive with the immunity of the officials in all instances. (See 3 Davis, Administrative Law Treatise (1958), 482-505, 542-544; 2 Harper and James, The Law of Torts, 1640-1642, 1657-1665; Hall and Wigmore, *Compensation for Property Destroyed to Stop the Spread of a Conflagration* (1907), 1 Ill.L.Rev. 501, 514 et seq.) The danger of deterring official action is relevant to the issue of liability of a public body but is not decisive of that issue. It is unlikely that officials would be as adversely affected in the performance of their duties by the fear of liability on the part of their employing agency as by the fear of personal liability. The community benefits from official action taken without fear of personal liability, and it would be unjust in some circumstances to require an individual injured by official wrongdoing to bear the burden of his loss rather than distribute it throughout the community . . . ."

In response to the decisions in *Muskopf* and *Lipman,* the Legislature enacted a moratorium statute suspending their effect for a limited period of time. (Stats. 1961, ch. 1404.) The Law Revision Commission immediately commenced an independent study of problems relating to sovereign immunity and recommended legislation which was substantially enacted as the California Tort Claims Act. In its recommendations the Law Revision Commission several times mentioned that the maintenance of effective service to the public by governmental employees required that they be given immunity from liability for damages caused by a discretionary act within the scope of their authority. (*E.g.,* Recommenda-

tions, pp. 810, 817.) The Law Revision Commission felt that similar considerations of policy justified a comparable immunity where the claim was against a governmental entity (*id.* at p. 810). At the same time the Law Revision Commission stated that: "Yet it would be harsh and unjust to deny compensation to all persons injured as the result of the wrongful or negligent acts or omissions of public employees. Government operates for the benefit of all; hence, it is reasonable to expect that all should bear some of the burden of the injuries that are wrongfully inflicted by the government. The basic problem is to determine how far it is desirable to permit the loss distributing function of tort law to apply to public entities without unduly frustrating or interfering with the desirable purposes for which such entities exist." *(Ibid.)* Accordingly, the Law Revision Commission recommended that public entities be made liable in some areas of the law, even if their employees enjoyed a discretionary immunity. One of those areas was where the entity failed to exercise reasonable diligence to comply with a mandatory statute or enactment. (Recommendations at pp. 815-816.)

The legislative response was the enactment of the California Tort Claims Act. In section 815 the general principle was established that, except as a statute otherwise provided, a public entity was not liable for injury arising out of its act or omissions or that of a public employee or any other person. Any liability established by the statute was expressly declared (§ 815 subd. (b)) to be subject "to any immunity of the public entity provided by statute." The Legislative Committee comment concerning this section stated that in other parts of the act many sections provided for liability of governmental entities under specific conditions; that there were many sections granting public entities and public employees broad immunities from liability; and that the immunity provisions of subdivision (b) of section 815 "will as a general rule" prevail over other sections imposing liability. Perhaps somewhat ingenuously, the Legislative Committee comment continued "Where the sections imposing liability or granting immunity do not fall into this general pattern, the sections themselves make this clear."

As noted above, one of the sections creating liability upon a public entity is section 815.6 dealing with injuries proximately caused by the agency's failure to discharge a mandatory duty. The Law Revision Commission comment to section 815.6 states in part: "In the sections that follow in this division, there are stated some immunities from this general rule of liability. See, for example, Section 818.2."

Section 818.2 states: "A public entity shall not be liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law."[5] The Law Revision Commission comment to section 818.2 commences with the observation that "This section would be unnecessary except for a possible implication that may arise from section 815.6 . . ."

Next in the Tort Claims Act is section 818.4. The Legislative Committee comment to it states "This section, like Section 818.2, would be unnecessary but for a possible implication that might arise from Section 815.6. . . ."

One more section of the Tort Claims Act should be mentioned at this point. It is section 821.2.[6] With respect to immunity of public employees, that section states in language identical to the language in section 818.4, dealing with public entities, an immunity for injuries arising out of licensing activities.

The thrust of appellant's argument is that section 815.6 created liability upon the Public Utilities Commission for its failure to perform its mandatory duty and revoke Blue and White's operating authority.

In reply respondent quotes the above comments of the Legislative Committee and Law Revision Commission to the section of the statute, and argues that section 818.4 creates an absolute immunity.[7]

---

[5]We discuss below respondent's contentions that this section affords an independent basis of immunity to it.

[6]"A public employee is not liable for an injury caused by his issuance, denial, suspension or revocation of, or by his failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where he is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked."

[7]Respondent also cites the Legislative Committee comment to section 820.2. That section reads: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." The Legislative Committee pointed out that the section restates existing California law in statutory form "to ensure that, unless otherwise provided by statute, public employees will continue to remain immune from liability for their *discretionary* acts within the scope of their employment." The Legislative Committee comment continued: "In the sections that follow, several immunities of public employees are set forth even though they have been regarded as within the *discretionary* immunity. These specific immunities are stated here in statutory form so that the liability of public entities and employees may not be expanded by redefining 'discretionary immunity' to exclude certain acts that had previously been considered as discretionary." (Italics supplied.)

In reply to an argument made by appellant that the latter section was intended to immunize the licensing activities of public entities only when the injury is caused by discretionary activities, respondent argues that the mandatory—discretionary argument is unsound. We reject respondent's argument.

■ In the first place it ignores the judicial and legislative history to which we have adverted at some length. It is clear from that history that the Legislature intended (a) to make public entities liable where their employees were liable; (b) to continue the immunity granted to public employees for *discretionary acts within the scope of their employment;* and (c) to create liability on the part of governmental entities when injury was caused by failure to perform a mandatory duty. The sections go no further. They do not purport to change the prior law that a public employee *was* liable for his failure to perform a mandatory duty. Such an interpretation is consonant not only with the entire history leading up to the act but with the public policy considerations discussed above. No chilling of governmental activity occurs if it is the performance of, or omission to perform, a *mandatory* duty that is involved.

In the second place, our conclusion that section 818.4 provides immunity only for discretionary activities is also consonant with the language of the statute itself. As appellant argues, a truncated version of section 818.4 would more readily lend itself to the interpretation contended by respondent—that the section was intended to create an absolute immunity without regard to whether the agency's action was discretionary or mandatory. Thus, if the statute read as indicated by the unbracketed material in footnote 8, it would contain a flat prohibition against liability for injuries caused by licensing activities. With the addition of the "where" clause which we have bracketed in footnote 8, a qualification is put on that absolute immunity.[8]

Respondent argues at length that the bracketed clause (and its counterpart in § 821.2) mean only "that the action of the entity or employee must be within the scope or range of the authority in order for the immunity to obtain." As our discussion above indicates, the fact that an employee *was* acting within the scope of his authority was, quite

---

[8]"A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization [where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked]."

obviously, one of the elements necessary to exist in pre-Tort Claims Act law before an individual employee could claim immunity. (E.g., *Muskopf* v. *Corning Hospital Dist., supra,* 55 Cal.2d at p. 220; *Lipman* v. *Brisbane Elementary Sch. Dist., supra,* 55 Cal.2d at p. 233.) The "where" clauses of sections 818.4 and 821.2 show that this remains an element of the law.

But, a second element in pre-Tort Claims Act law was that the acts be *discretionary,* since government officials were held liable for the negligent performance of their *mandatory* duties. (*Muskopf,* at p. 220; *Lipman,* at p. 229.) Respondent's argument fails to take into account that the "where" clause also recognizes and preserves *this* prerequisite to immunity. Thus, immunity attaches where the public entity or employee "is authorized by enactment to determine *whether or not* such [licensing] authorization should be issued, denied, suspended, or revoked." (§§ 818.4 and 821.2; italics supplied.) The very fact that the authority referred to in the statute gives the employee a choice demonstrates that discretion is necessarily involved.

The cases have recognized this proposition. In *Shakespeare* v. *City of Pasadena* (1964) 230 Cal.App.2d 375, 386 [40 Cal.Rptr. 863], the court stated (in what may be dictum) that "section 821.2 [the employee counterpart of section 818.4] applies only to discretionary and not to mandatory acts. . ." In *Burns* v. *City Council* (1973) 31 Cal.App.3d 999 [107 Cal.Rptr. 787], while holding that immunity existed in an action arising out of a denial of a building permit *because there was no mandatory duty to issue it* (31 Cal.App.3d at p. 1005) the court noted that because of the existence of the "where" clause "It does not necessarily follow that sections 818.4 and 821.2 grant an *absolute* immunity . . . ." (italics in original; 31 Cal.App.3d at p. 1003).

Contrary language appears in *O'Hagan* v. *Board of Zoning Adjustment* (1974) 38 Cal.App.3d 722, 726 [113 Cal.Rptr. 501]. There it is said that the immunity of section 818.4 "is so strong that it even prevails over the liability imposed by section 815.6 for failure to discharge a mandatory duty . . . ." However, that statement is dictum since, as *O'Hagan* itself notes with respect to the use permit there involved, "all functions relating to the revocation of the use permit were entirely discretionary."[9] (38 Cal.App.3d at p. 731.)

---

[9]A further statement in the case (that it is "unquestionable" that the licensing activity immunity of § 818.4 prevails over the liability established by § 815.6) is supported only by citations to the Legislative Committee comment to section 818.4 to

We thus hold that, given the mandatory nature of the Public Utilities Commission's duty to revoke Blue and White's license, no immunity attaches by virtue of section 818.4.

Respondent also argues that it is exempt from liability under the provisions of section 818.2: "A public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." We reject the argument. What we have said about the history of section 818.4 applies in large part to section 818.2. It was adopted to except any possible implication that might arise from section 815.6. Its exception to the rule of that section must, for the same reasons discussed above, be related to discretionary activities. The Law Revision Commission itself commented that under the Federal Tort Claims Act the immunity provided for in California by section 818.2 "falls within the general immunity for discretionary acts." To apply section 818.2 immunity to acts such as those undertaken here "would completely eviscerate Government Code Section 815.6." (*Elton* v. *County of Orange,* (1970) 3 Cal.App.3d 1053, 1059 [84 Cal.Rptr. 27].) As *Elton* points out section 818.2 "was designed to provide immunity for legislative and quasi-legislative action and *to protect the exercise of discretion* by law enforcement officers in carrying out their duties . . . ." (*Ibid;* italics supplied.) Because we agree that section relates to discretionary activities, while the issue here involves a failure of a mandatory duty, we find it unnecessary to reach the additional question of whether section 818.2 is limited to law enforcement activities and if so, whether the commission's conduct here is of that character.

For the reasons expressed above we hold that liability was properly pleaded on account of section 815.6 and that the statutory immunities discussed above have no application. Accordingly, it was error to sustain the demurrer to the amended complaint. The judgment (order) of dismissal is reversed with directions to allow respondent to answer the complaint.

Allport, Acting P. J., and Potter, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 20, 1975. Richardson, J., was of the opinion that the petition should be granted.

---

which we have referred and to Van Alstyne, California Government Tort Liability, *supra*, page 165. The latter reference makes the flat statement that the immunity for licensing activities prevails over the liability imposed by section 815.6 for failure to discharge a mandatory duty. The author cites the same comment to section 818.4 and also refers to section 815, subdivision (b). That citation begs the question at issue here; the section merely makes clear that "The liability of a public entity established by this part . . . is subject to any immunity of the public entity provided by statute . . . ."