184 N.J. Super. 204 (1982)
445 A.2d 465
BILLY BOSCH AND AIDA RIVERA, PLAINTIFFS,
v.
ISAAC AND GENONEA HAIN, THE CITY OF HOBOKEN, STATE OF NEW JERSEY, JOHN A. DOE, JOHN B. DOE, DEFENDANTS. PLACEDO SOTO, AS ADMINISTRATRIX AD PROSEQUENDUM FOR THE HEIRS-AT-LAW OF NICHOLAS TORRES ET AL., PLAINTIFF,
v.
ISAAC HAIN AND GENOVEA HAIN, DEFENDANTS. CETERAM DREPAUL, AS ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATES OF JACOB DREPAUL ET AL., PLAINTIFFS,
v.
CITY OF HOBOKEN, MUNICIPAL CORPORATION, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division Hudson County.
Decided February 11, 1982.
*206 Frederick J. Dennehy for plaintiffs Bosch and Rivera (Wilentz, Goldman & Spitzer, attorneys).
Bennett J. Wasserman for plaintiffs Drepaul.
Peter E. Markens, Deputy Attorney General, for defendant State of New Jersey (in Bosch) (James R. Zazzali, Attorney General, attorney).
Howard M. Nirenberg, Deputy Attorney General, for defendant State of New Jersey (in Drepaul) (James R. Zazzali, Attorney General, attorney).
Jay M. Liebman, Assistant County Counsel, for defendant County of Hudson (in Drepaul) (Francis P. Morley, County Counsel, attorney).
Carl F. Schaeffer for defendant City of Hoboken (Lawrence E. Florio, City Attorney, attorney).
Charles M. James for defendant Hain (James & Addas, attorneys).
O'BRIEN, A.J.S.C.
On January 20, 1979 21 people were killed and others injured in a fire in the City of Hoboken. These three suits are for the wrongful death and personal injuries suffered by some of the victims of this fire who were occupants of a multiple dwelling owned by defendants Isaac and Genovea Hain. Pursuant to the New Jersey Hotel and Multiple Dwelling Law, N.J.S.A. 55:13A-1 et seq., the building was inspected on October 31, 1978. This inspection was performed by the Hoboken Housing Bureau *207 in accordance with an agreement between the State and the City of Hoboken, authorized by N.J.S.A. 55:13A-21.
The inspection revealed approximately 190 violations, many of which were later characterized as "life threatening" by the chief fire inspector. In accordance with customary procedure, a report was forwarded to the New Jersey Department of Community Affairs which issued a standard form "Notice of Violation" to defendant owners about 30 days after the inspection. The terms of the notice allowed defendant owners 60 days, or until February 6, 1979, to remedy the violations. N.J.S.A. 55:13A-13. Within that time the fire occurred.
According to the chief fire inspector, the fire was caused by three children from the fourth- and fifth-floor apartments, who allegedly set fire to newspapers and rubbish on the second- and third-floor landings.

Procedural History
The initial case was filed on March 21, 1980 by Billy Bosch and Aida Rivera against the owners of the building, the city and the State. On July 10, 1980 a separate complaint was filed by Placedo Soto et al. against the owners of the building, but did not name any public body as a defendant. On November 24, 1980 the Drepaul case was filed, naming as defendants, in addition to the owners, the City of Hoboken, County of Hudson and the State of New Jersey. On May 19, 1981 the Bosch and Soto cases were consolidated. The Drepaul case had not been consolidated.
The public entity defendants in the Drepaul case moved for summary judgment, which motion was heard on September 25, 1981. Defendants based their argument chiefly upon the holdings in Jennifer Brothers, etc. v. Highlands, 178 N.J. Super. 146 (App.Div. 1978), and National Spring Co. v. Pierpont Associates, Inc., 146 N.J. Super. 63 (Law Div. 1976). Drepaul's attorney did not present any substantial argument against application of the principles stated in those cases and accordingly the motions for summary judgment were granted.
*208 Thereafter the City of Hoboken and the State of New Jersey, defendants in the Bosch case, moved for summary judgment. (Curiously the State of New Jersey is represented by a different Deputy Attorney General in the Bosch case than the Deputy appearing in the Drepaul case.) In opposition to that motion, the attorney for plaintiffs Bosch and Rivera advanced a number of theories of liability which had not been raised in the Drepaul action. These arguments advocating imposition of liability against public entities under certain circumstances were so persuasive that the court was moved to reconsider the ruling in the Drepaul matter as well.
Accordingly, a hearing was held with all counsel present from both the Bosch and the Drepaul cases (including the two separate Deputy Attorneys General). All parties agreed that the County of Hudson could not be held liable under any theory and thus the summary judgment previously entered in favor of the county was confirmed.
This case raises substantial questions as to the construction of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq. The court is informed in the comment which accompanies N.J.S.A. 59:2-1 that the approach should now be "whether an immunity applies and if not, should liability attach." Further, the court is admonished that in utilizing this approach it exercise restraint in the acceptance of novel causes of action against public entities. Thus, although N.J.S.A. 59:2-2 appears to establish sweeping vicarious liability for the acts of public employees, such general liability is, of course, subject to and circumscribed by the express immunity provisions of the act. See Setrin v. Glassboro State College, 136 N.J. Super. 329 (App.Div. 1975), and Wuethrich v. Delia, 155 N.J. Super. 324 (App.Div. 1978), certif. den., 77 N.J. 486 (1978).
Defendants first rely upon the inspection immunity contained in N.J.S.A. 59:2-6. That section reads as follows:
A public entity is not liable for injury caused by its failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property; provided, however, that nothing in this section shall exonerate a *209 public entity from liability for negligence during the course of, but outside the scope of, any inspection conducted by it, nor shall this section exonerate a public entity from liability for failure to protect against a dangerous condition as provided in Chapter 4.
With respect to the last phrase in this section, the comment states:
The inclusion of the reference to Chapter 4 is intended to indicate that this immunity shall not apply when dangerous conditions of public property are involved. In those cases Chapter 4 of this Act provides the controlling principles of liability.
Due to this reference, chapter 4 must be read in pari materia with N.J.S.A. 59:2-6.
N.J.S.A. 59:4-2 provides as follows:
A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
(a) a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
(b) a public entity had actual or constructive notice of the dangerous condition under § 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
Plaintiff contends that a dangerous condition did in fact exist on the property; that it was public property, as defined in N.J.S.A. 59:4-1(c); that the dangerous condition was a proximate cause of the injuries, and that failure by defendant to protect against the dangerous condition was palpably unreasonable. This contention is based upon the allegedly "life threatening" nature of the housing code violations and the long delay after the inspection before anything was done, even sending a written notice to the owner as mandated by N.J.S.A. 55:13A-13.
In order for chapter 4 to be brought into play in construing N.J.S.A. 59:2-6, the property upon which the dangerous condition exists must be "public" property. This determination hinges upon whether defendants had sufficient title or control over the premises to label it "public," as defined in N.J.S.A. 59:4-1(c).
*210 It is, of course, conceded that neither the city nor the State had title to the property in question. Plaintiff contends that the Hotel and Multiple Dwelling Law, N.J.S.A. 55:13A-1 et seq., compels a finding of regulatory control over the property by defendant public entities. Pursuant to this law, defendants are empowered to conduct inspections, N.J.S.A. 55:13A-13, promulgate building regulations for health and safety, N.J.S.A. 55:13A-7, and require procurement of a certificate of registration, N.J.S.A. 55:13A-12.
In addition to these administrative mandates, it is further noted that the public entity has a variety of enforcement mechanisms to assist in the abatement of violations. For example, defendant is required to issue written notice to the owner stating in what manner it does not comply with the act or regulations and fixing a date for compliance. N.J.S.A. 55:13A-13. Furthermore, if such violations are not remedied, the Commissioner has the authority to seek injunctive relief, N.J.S.A. 55:13A-16, and to issue an order directing that the multiple dwelling be vacated, N.J.S.A. 55:13A-17, if inspection reveals "an imminent hazard to health, safety or welfare of the occupants." In total, plaintiff argues that the Hotel and Multiple Dwelling Law has provided defendant with sufficient regulatory control over the premises to cause that property to be considered "public."
In light of this extensive regulatory control a persuasive argument can be mounted to label the property in question as "public," sufficient to bring into play chapter 4 of the act. There is an equally substantial argument advanced by the State that such concept of regulatory control must be coupled with an interest in the real estate. It is unnecessary for the court to resolve this difficult question since it has reached the conclusion that N.J.S.A. 59:2-6 is not applicable under the facts presented.
It is not alleged that defendants failed to make an inspection, nor is it alleged that the inspection which was made was inadequate or negligent. In fact, plaintiffs base their *211 allegations of "control" on the findings of that inspection. There is no evidence of negligence on the part of defendants' agents during the actual physical inspection of the premises. Thus the court has concluded that N.J.S.A. 59:2-6 does not apply.
The State further argues that the permissive and required actions after the inspection are a part of the inspection procedure. Thus it concludes that the inspection immunity should be construed to cover such follow-up activity. This argument is not persuasive in view of the plain language of N.J.S.A. 59:2-6. Rather, the focus of plaintiff's action shifts to a contention that defendants failed to enforce the available remedial measures subsequent to the actual physical inspection of the premises. Thus it appears that the applicable section of the Tort Claims Act is N.J.S.A. 59:2-4 which provides:
A public entity is not liable for an injury caused by adopting or failing to adopt a law or by failing to enforce any law. [Emphasis supplied]
Unlike N.J.S.A. 59:2-6, which permits liability in the event of failure to protect against a dangerous condition on public property, the language of N.J.S.A. 59:2-4 is clear, concise and without exception.
Plaintiff seeks to utilize the ministerial-discretionary dichotomy in molding an exception to both the inspection and failure to enforce the law immunities. Plaintiff contends that all of defendant's actions and omissions subsequent to the inspection were of a ministerial nature and thus not immune under N.J.S.A. 59:2-4. It is true that some of the actions to be taken by the Commissioner subsequent to an inspection under the Hotel and Multiple Dwelling Law are ministerial. In fact, they are mandated, e.g., N.J.S.A. 55:13A-13(d). On the other hand, other actions which he may take are clearly permissive and require the exercise of judgment, e.g., N.J.S.A. 55:13A-17, dealing with orders to vacate the premises. However, the issue is irrelevant, even if all of the actions were purely ministerial or, in fact, mandatory, since the immunity afforded by N.J.S.A. 59:2-4 is not limited solely to discretionary acts.
*212 Plaintiff's reliance on Roseville Community Hospital v. State, 141 Cal. Rptr. 593, 74 Cal. App.3d 583 (Sup.Ct. 1977), is misplaced since, unlike New Jersey, California has enacted a specific section which imposes liability on a public entity for failure to discharge a mandatory duty. That section reads as follows:
Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty. [Government Code, § 815.6]
Both defendants city and State agree that if New Jersey had a comparable provision in its Tort Claims Act, plaintiff's position would be substantially strengthened.
However, even in California, there is a difference of opinion as to whether, in the event of the failure to enforce the law, immunity only applies to discretionary law enforcement activity. The decision to that effect in Roseville Community Hospital v. State, supra, relies upon Morris v. County of Marin (1977), 18 Cal.3d 901, 916, 136 Cal. Rptr. 251, 559 P.2d 606 (1977). In that case the Supreme Court of California fully explains its conclusion that the immunities afforded by the sections of their Tort Claims Act, relating to the issuance of permits and failure to enforce laws, attach only to discretionary acts and does not shield a governmental entity for failure to comply with a mandatory duty imposed by another statute. The Morris court quoted from a legislative committee which commented upon § 818.4 (injury caused by the issuance, etc. of any permit) as follows:
This section like § 818.2 (failure to enforce a law) would be unnecessary but for a possible implication that might arise from § 815.6.
The court then continued:
§ 818.4 would have been quite "necessary" if the Legislature had intended to immunize public entities from liability arising from ministerial acts, for no other section in the Tort Claims Act provides such immunity for non-discretionary activities. The section could have been considered "unnecessary" only if the Legislature intended it to apply only to discretionary activities that were afforded a general immunity through §§ 820.2 and 815, sub-division (b). Seen in this light the "possible implication" of § 815.6 which the Legislature desired to disavow was simply an interpretation which would render a public entity liable *213 for a discretionary permit or licensing decision whenever the entity was under a statutory obligation to make such a discretionary decision. The comment demonstrates that the Legislature intended to preserve immunity when the entity retained such discretion. In the absence of such discretion, however, the legislative comment supports the conclusion that no immunity is afforded. [136 Cal. Rptr. at 258, 259, 559 P.2d 606]
A 1980 case, Grenell v. City of Hermosa Beach, 103 Cal. App.3d 864, 163 Cal. Rptr. 315 (D.Ct.App.), in discussing the determination in Morris v. County of Marin, supra, points out that with respect to the immunity relating to permits, the statute itself limits the immunity to instances "where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such permit should be issued" and, therefore, "the statutory language itself suggests that the sections' immunity attaches only to discretionary activities." With respect to Government Code, § 818.2 (failure to enforce law) the California Supreme Court in Morris found support for its interpretation in the Law Revision Commission's comment accompanying the section which the court stated "leaves no doubt that the section was intended to encompass only discretionary law enforcement activity."
Incidentally, with respect to § 818.6 (inspection immunity), in a footnote the California Supreme Court in the Morris case observed:
Significantly, unlike § 818.4 (permit immunity), § 818.6 (inspection immunity) contains no language limiting immunity to situations in which an entity has discretion to determine "whether or not" a safety or health hazard is present. In light of this difference in language and the purpose of the section, the immunity afforded by § 818.6 would attach to both ministerial and discretionary conduct in this area. [136 Cal. Rptr. at 260, fn. 9, 559 P.2d 606]
Thus, even in California, notwithstanding § 815.6 concerning mandatory duties, the highest court of that state has agreed that the inspection immunity applies to both discretionary and ministerial acts.
The concurring opinion of Justice Clark in Morris v. Marin County, supra, states his disagreement with the majority. He cites the decision in Clayton v. Rossman, 62 Cal. App.3d 666, 670-671, 133 Cal. Rptr. 306 (D.Ct.App. 1976), holding that the *214 inspection immunity of § 818.6 applies to ministerial as well as discretionary acts, as the majority found in Morris, but he reasons that § 818.4 (the permit immunity) as well as § 818.6 extend to ministerial acts. He concluded that unless the sections were held to apply to ministerial acts as well as discretionary acts, they would be "superfluous" and that the legislative committee comment to the sections so recognizes. He concludes that the conflict in the cases should be resolved in favor of the legislative committee comment and the policy articulated by the commission. He would disapprove the decisions of Elson v. Public Utilities Comm'n, 51 Cal. App.3d 577, 587, 124 Cal. Rptr. 305 (D.Ct.App. 1975); Burns v. City Council, 31 Cal. App.3d 999, 1004, 107 Cal. Rptr. 787 (D.Ct.App. 1973), and Shakespeare v. City of Pasadena, 230 Cal. App.2d 375, 386, 40 Cal. Rptr. 863 (D.Ct. App. 1964) (which held that § 818.4 and § 821.2 apply only to discretionary and not to mandatory acts). Justice Clark quotes extensively from the 1963 report of the California Law Revision Commission, pp. 817-818:
Public entities and public employees should not be liable for failure to make arrests or otherwise to enforce any law. They should not be liable for failing to inspect persons or property adequately to determine compliance with health and safety regulations. Nor should they be liable for negligent or wrongful issuance or revocation of licenses and permits. The government has undertaken these activities to insure public health and safety. To provide the utmost public protection, governmental entities should not be dissuaded from engaging in such activities by the fear that liability may be imposed if an employee performs his duties inadequately. Moreover, if liability existed for this type of activity, the risk exposure to which a public entity would be subject would include virtually all activities going on within the community. There would be potential governmental liability for all building defects, for all crimes and for all outbreaks of contagious disease. No private person is subjected to risks of this magnitude. In many of these cases, there is some person (other than the public employee) who is liable for the injury, but liability is sought to be imposed on government for failing to prevent that person from causing the injury. The Commission believes that it is better public policy to leave the injured person to his remedy against the person actually causing the injury than it is to impose an additional liability on the government for negligently failing to prevent the injury. And where no third party is liable  as in the case where a license application is denied  the aggrieved party has ample means for obtaining relief in the courts other than by tort actions for damages. Far more persons would suffer if government did not perform these functions at all than would be benefited by *215 permitting recovery in those cases where the government is shown to have performed inadequately.
Justice Clark proceeds:
The grave potential liability created by today's decision is too apparent. For example, the determination whether the proposed wiring of a building complies with a building code is usually if not always a ministerial determination, and under today's majority decision public entities will face huge liabilities if required to repair approved but defective wiring or to compensate for fires caused by the defective wiring. [136 Cal. Rptr. at 265, 559 P.2d 606]
The New Jersey Supreme Court had occasion to examine these California decisions in Malloy v. State, 76 N.J. 515 (1978). That case involved an interpretation of N.J.S.A. 59:2-5 dealing with licensing. The Appellate Division had held that the immunity conferred on a licensing body under that section extended only to its discretionary acts and did not apply to a ministerial act by an employee. The Appellate Division had relied upon Elson v. Public Utilities Comm'n, 51 Cal. App.3d 577, 124 Cal. Rptr. 305 (Ct.App. 1975), which had held that the comparable California statute conferred immunity only to discretionary activities and did not protect against failure to discharge a mandatory duty. The California Supreme Court had upheld that construction in Morris v. County of Marin, supra. Our Supreme Court concluded as follows:
To the extent that it is contrary to our interpretation of the statute, we disagree with the rationale of the California decisions. We find in the New Jersey Tort Claims Act a clear expression of legislative intent that the licensing function, as defined, be immune from tort liability for negligence or mistake, whether the act involved be discretionary or ministerial. [76 N.J. at 521]
The reasoning of our Supreme Court in Malloy is revealing. In reviewing the language in Morris, at 258, 559 P.2d 606, "where the public entity ... is authorized by enactment to determine whether or not such [permit] should be issued [or] denied ..." our court concluded, in 76 N.J. at 520, this provision "to serve only to identify the public entity to whom the immunity extends and not to limit such immunity to the decision making process", as the Supreme Court of California had found in the Morris case. Our court continued:

*216 If its meaning were limited to discretionary governmental acts, the entire provision would be surplusage, as a preceding section of the Act immunizes a public entity from liability for discretionary activities. It provides:
(a) a public entity is not liable for an injury resulting from the exercise of judgment or discretion vested in the entity.
The court then observed that its attention had been directed to subparagraph (d) of N.J.S.A. 59:2-3, which contains the following:
... Nothing in this section shall exonerate a public entity for negligence arising out of acts or omission of its employees in carrying out their ministerial functions.
The court continued:
We recognize that, ordinarily, under the Act a public entity or its employee is liable for negligence in the performance of a ministerial duty. See N.J.S.A. 59:2-2. However, N.J.S.A. 59:2-1(b), provides that any liability of a public entity under the Act is subject to any immunity provided by the Act. The comment to this subsection also heretofore quoted states that it "is intended to insure that any immunity provisions in the Act or by common law will prevail over the liability provisions." [Emphasis supplied]
This same reasoning applies to N.J.S.A. 59:2-4 (failure to enforce a law) and N.J.S.A. 59:2-6 (failure to inspect or negligent inspection). There is no indication in either of these sections that immunity applies only to discretionary acts.
The language of N.J.S.A. 59:2-6 expressly provides two clearly stated exceptions to the immunity granted. The statutory language does not carve out an additional exception for ministerial acts. If the Legislature had intended to limit immunity to those inspection activities or enforcement activities which were discretionary, it could have so stated, as it did in N.J.S.A. 59:2-3. In the absence of such clear expression, such an additional exception cannot be recognized. N.J.S.A. 59:2-4 offers no exceptions to its general immunity. On its face, it is clear, concise and without exception.
After the foregoing analysis of our Tort Claims Act, as well as comparable provisions of the California Tort Claims Act and the California cases, this court concludes that there is absolute immunity to both the City of Hoboken and the State of New Jersey. This same conclusion was reached by Judge Bilder in *217 National Spring Co. v. Pierpont Associates, Inc., supra, a case factually similar to the instant case in that it involved a fire shortly after an inspection and an interpretation of the same two sections. His conclusion was reached without reference to any of the California cases, but instead relied upon the policy of the Tort Claims Act as contained in the "Report of the Attorney General's Task Force on Sovereign Immunity," 214 (1972), which is similar to the conclusion of the California Law Revision Commission cited by Justice Clark in the Morris v. Marin County case quoted above. Judge Bilder concluded rather picturesquely:
They would be caught between the Scylla of making no inspections and the Charybdis of actively abating every failing which inspection uncovered  before harm resulted from that condition. Such a result would be unthinkable  short of legislative action which could provide a mechanism for responding to the liability at the same time the duty is created.
Accordingly, for the reasons stated above, the motions for summary judgment on behalf of the City of Hoboken and the State of New Jersey are granted. Orders may be submitted under the five-day rule. The decision in the Drepaul case, therefore, remains as heretofore, but a new order should be submitted in light of the renewed argument.