[No. B056818. Second Dist., Div. One. Sept. 26, 1991.]

BIJAN W. E. POWELL, a Minor, etc., Plaintiff and Appellant, v. THE STATE OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Larry J. Easterwood for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, M. David Stirling, Chief Deputy Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Marvin Goldsmith, Assistant Attorney General, Robert H. Francis and Leonard Pape, Deputy Attorneys General, for Defendant and Respondent.

OPINION

VOGEL, J.—The California Child Day Care Facilities Act (Health & Saf. Code, § 1596.70 et seq.)[1] requires family day-care homes for children to maintain liability insurance or, alternatively, to maintain a file of affidavits stating that each "parent has been informed that the family day care home does not carry liability insurance or a bond according to standards established by the state. . . . These affidavits shall be on a form provided by the [state] *and shall be reviewed at each licensing inspection.*" (§ 1597.531, subd. (a), italics added.) At the initial licensing stage, the Department of Social Services (DSS) is *required* to make an announced site visit prior to issuance of the license. (§ 1597.55, subd. (a).) Each time a license is renewed, DSS is *required* to make an unannounced site visit. (§ 1597.55, subd. (b).)

Despite these legislative directives, we conclude that when DSS renews a license without making the required inspection and without thereby determining that the home is out of compliance with section 1597.531, the immunity of section 818.6 of the Government Code shields DSS from liability to a child thereafter injured at an uninsured home. We therefore affirm a summary judgment granted in favor of DSS.[2]

FACTS

In 1982, DSS issued a license to Jessie Holt, authorizing her operation of a family day-care home for children for a three-year period. In 1985, Holt completed an application to renew her license, declaring under penalty of perjury that she was in compliance with the "Health and Safety Codes and Regulations Concerning Licensing and Fire Safety." She submitted her application to DSS by mail and DSS, in response, renewed her license for another three-year period, September 2, 1985, to September 1, 1988. No one from DSS talked to Holt or inspected or visited Holt's home.

Holt's declaration was false. At no time did she carry liability insurance (or a bond) or maintain a file of affidavits from parents acknowledging that her facility was uninsured—not in 1982 when she first obtained her license, or in 1985 when it was renewed, or at any other time.

In April 1986, plaintiff Bijan W. E. Powell, a 19-month-old boy enrolled at Holt's family day-care home, lost three of his fingers in an accident at the

---

[1] Unless otherwise stated, all section references are to the Health and Safety Code.

[2] In *MacDonald* v. *State of California* (1991) 230 Cal.App.3d 319, 322-323 [281 Cal.Rptr. 317], Division One of the Fourth District held, on different facts and in response to different arguments, that this statutory scheme does not create a privately enforceable mandatory duty on the part of governmental entities to discover and prevent harmful conduct that might injure children placed in family day-care homes by their parents. *MacDonald* therefore did not reach the immunity issues raised here. (*Id.* at p. 334.)

home. Bijan sued Holt. Later, after learning that Holt was uninsured, Bijan added DSS as a defendant, alleging that DSS failed to perform various mandatory duties imposed upon it by the act, specifically by sections 1597.531 and 1597.55.

Holt, who is destitute and judgment-proof, stipulated to entry of judgment against her in the amount of $350,000. DSS, asserting its statutory immunities as a bar to Bijan's claims, successfully moved for summary judgment and Bijan appeals from the judgment thereafter entered.[3]

## DISCUSSION

Bijan contends DSS was under a mandatory duty to monitor and regulate Holt's family day care home for children and, as part of that duty, to determine whether Holt was in compliance with section 1597.531.[4] ██ ██ Relying on *Morris* v. *County of Marin* (1977) 18 Cal.3d 901 [136 Cal.Rptr. 251, 559 P.2d 606], and *Elson* v. *Public Utilities Commission* (1975) 51 Cal.App.3d 577 [124 Cal.Rptr. 305], Bijan contends the immunity granted by section 818.6 of the Government Code[5] attaches only to

---

[3]Michelle Powell, Bijan's mother and guardian ad litem, declared in opposition to DSS's motion that Holt told her, at the time of Bijan's enrollment, that Holt was "licensed and regulated by the State of California." Bijan's mother also declared that she never signed an affidavit or any document authorizing Holt to "avoid compliance with any state law or regulation." Bijan's mother does *not* tell us, however, whether she ever discussed insurance with Holt, whether Holt told her that the home was uninsured or whether, had she been asked, she would have signed an affidavit and entrusted Bijan's care to an uninsured licensee.

[4]Section 1597.531, as it read at the times relevant to this case, provided that:

"(a) All family day care homes for children shall either maintain in force liability insurance covering injury to clients and guests in the amount of at least []$100,000[] per occurrence and []$300,000[] in the total annual aggregate, sustained on account of the negligence of the licensee or its employees, or a bond in the aggregate amount of []$300,000[]. In lieu of the liability insurance or the bond, the family day care home may maintain a file of affidavits signed by each parent with a child enrolled in the home which meets the requirements of this subdivision. The affidavit shall state that the parent has been informed that the family day care home does not carry liability insurance or a bond according to standards established by the state. These affidavits shall be on a form provided by [DSS] and shall be reviewed at each licensing inspection.

"(b) [DSS] shall initiate proceedings to revoke the license of any family day care home that is out of compliance with this section."

Section 1597.531 was amended in 1990 to add provisions for homes located on premises owned by someone other than the provider and to delete the requirement of former subdivision (b) that DSS initiate license revocation proceedings when a family day-care home is out of compliance with this section. (Stats. 1990, ch. 1050, § 1 [Sen. Bill No. 2293].)

[5]Section 818.6 of the Government Code provides, in its entirety, that:

"A public entity is not liable for injury caused by its failure to make an inspection, or by reason of making an inadequate or negligent inspection, of any property, other than its property (as defined in subdivision (c) of Section 830), for the purpose of determining whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety."

discretionary acts and does not shield DSS when it fails to perform the mandatory duties imposed on it by the Child Day Care Act.[6] DSS contends it is immune, without regard to whether its duty to inspect is mandatory or discretionary. DSS is correct.

A.

The California Child Day Care Facilities Act (§ 1596.70 et seq.) covers day-care centers (§ 1596.90 et seq.)[7] and family day-care homes (§ 1597.30 et seq.; see also § 1596.71).[8] Under the act, a family day-care home may not be operated without a license. (§§ 1596.805, 1597.53.) To obtain a license for a family day-care home in the first instance, an applicant must submit an application including a statement confirming the applicant's financial security, evidence that the home contains a fire extinguisher or smoke detector device or both, the applicant's fingerprints, evidence of a current tuberculosis clearance for any adult in the home, evidence of the applicant's ability to comply generally with DSS's rules and regulations, and evidence of the applicant's good character. (§ 1597.54, subds. (a)-(f); see also Cal. Code Regs., tit. 22, § 102369.)

But there is no requirement that evidence of insurance or of adoption of the affidavit alternative be submitted with the initial application or with an application to renew an existing license. Instead, section 1597.531 requires only that the affidavits be maintained by the applicant and that DSS review the affidavits at each licensing inspection. (§ 1597.531, subd. (a).) The act does not require a family day-care home to file with DSS proof of insurance or proof of compliance with the affidavit alternative.

In short, the act requires a family day-care home to carry insurance or maintain the requisite file of affidavits, and requires DSS to review the file of affidavits at each licensing inspection, including the inspection that is required upon renewal of a license. (§ 1597.531, subd. (a).) The question, then, is whether DSS's admitted failure to inspect Holt's home at the time it

[6]The question whether a duty is "mandatory" arises because section 815.6 of the Government Code provides that "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." As will appear, this section overrides some, but not all, of the immunities granted to public entities.

[7]A "day care center" is any child day-care facility other than a family day-care home, and includes infant centers, preschools, and extended day-care facilities. (§ 1596.76.)

[8]A "family day care home" is a home which regularly provides care, protection and supervision of 12 or fewer children, in the provider's own home, for periods of less than 24 hours per day, while the parents or guardians are away. (§ 1596.78.)

renewed her license (as required by § 1597.55) affects DSS's reliance on the doctrine of governmental immunity as a bar to Bijan's claims. It does not.

### B.

Notwithstanding the duties imposed on DSS by the Child Day Care Act, DSS is immune.[9] The only theory on which it could conceivably be liable to Bijan is one of negligence arising out of its failure to inspect Holt's home and its resulting failure to discover that Holt did not maintain the required file of affidavits. This theory fails because the immunity conferred by section 818.6 of the Government Code for a failure to make an inspection, unlike certain other immunities, is absolute.

Bijan's reliance on *Morris* v. *County of Marin, supra,* 18 Cal.3d 901, is misplaced. In *Morris,* the County of Marin issued a building permit authorizing certain construction work. Contrary to the requirements of Labor Code section 3800, the county did not require the permittee to file a "certificate of insurance" establishing that he had obtained a valid policy of workers' compensation insurance. The permittee had no insurance.

About a month after the permit was issued, Richard Morris fell from a platform in the course and scope of his employment for the permittee, suffering severe injuries. If insurance had been provided as required, Morris would have been entitled to recover more than $200,000 in workers' compensation benefits. Morris sued the county, claiming the county's failure to fulfill its statutory obligation proximately caused his uncompensated injuries and that, therefore, the county should be liable for his damages. (*Id.* at p. 905.) The trial court sustained the county's demurrer without leave to amend, accepting the county's argument that it was immune under sections 818.2 (failure to enforce any law) and 818.4 (failure to revoke a license) of the Government Code. The Supreme Court reversed, but in doing so expressly distinguished the statute with which we are concerned, section 818.6 of the Government Code (failure to inspect). (*Id.* at pp. 915-916.)

First, the Supreme Court looked to the language of section 3800 of the Labor Code—that every county " 'which requires the issuance of a permit as a condition precedent to the construction . . . of any building . . . *shall require that each applicant for such permit have on file . . .* [a] certificate of

---

[9]Because we conclude that the distinction between "mandatory" and "discretionary" does not apply to the inspection immunity, we do not decide whether the directives of sections 1597.531 and 1597.55 are mandatory, nor do we address the issue whether section 1597.531, with its provision for the affidavit procedure in lieu of insurance coverage, is an enactment designed to protect against the risk of the particular injury suffered by Bijan within the meaning of section 815.6 of the Government Code.

insurance [which states] that there is in existence a valid policy of workmen's compensation insurance in a form approved by the Insurance Commissioner. . . .' " (*Morris* v. *County of Marin, supra,* 18 Cal.3d at p. 906, italics added.)

Second, the court turned to section 815.6 of the Government Code, which provides that where "a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." In *Morris,* the public entity conceded the requirements of Labor Code section 3800 were intended to protect against the very risk of uncompensated injury suffered by Morris but contended that section 815.6 of the Government Code did not apply because Labor Code section 3800 did not impose a mandatory duty on the county. (18 Cal.3d at p. 907.) The Supreme Court disagreed, concluding that the language of the statute clearly created a mandatory duty. (*Id.* at p. 910.)

Finally, the Supreme Court held that the immunities afforded by sections 818.2 and 818.4 of the Government Code attach only to discretionary activities and do not shield a public entity from liability relating to its failure to comply with a statutorily mandated duty. (*Id.* at pp. 911-917; see also *Elson* v. *Public Utilities Commission, supra,* 51 Cal.App.3d at p. 589.) In this context, however, the Supreme Court expressly distinguished the immunity conferred by section 818.6 of the Government Code:

"As the legislative comment to section 818.6 explains: 'Because of the extensive nature of the inspection activities of public entities, a public entity would be exposed to the risk of liability for virtually all property defects within its jurisdiction if this immunity were not granted.' In light of such purpose, we believe that *section 818.6 must reasonably be construed to insulate a public entity from any liability* which might arise as a result of an entity's failure to detect noncompliance with one of the myriad safety regulations contained in local or statewide building codes." (*Morris* v. *County of Marin, supra,* 18 Cal.3d at p. 916, italics added; see also *Clayton* v. *City of Sunnyvale* (1976) 62 Cal.App.3d 666, 670 [133 Cal.Rptr. 306] [the immunity conferred by § 818.6 of the Gov. Code applies to mandatory as well as discretionary duties].)

As DSS correctly observes, in both *Morris* and *Elson* the permittees were required to file with the public entities specified proof of insurance, and the failure to file put the entities on notice that the permittees were out of compliance. There is no such requirement in the statutes before us and the

only way DSS could have known that Holt was out of compliance with section 1597.531 was by making a nonnegligent inspection. Since the immunity conferred by section 818.6 of the Government Code shields DSS from liability for injuries resulting from its failure to make any inspection at all, as well as from liability for injuries resulting from a negligent inspection, DSS cannot be liable to Bijan for not discovering Holt's failure to comply with section 1597.531. (See also *Harshbarger* v. *City of Colton* (1988) 197 Cal.App.3d 1335, 1347 [243 Cal.Rptr. 463] ["Government Code section 818.6 grants absolute immunity whether the duty to inspect is construed as mandatory or discretionary, whether the act of inspection is called ministerial, discretionary or even voluntary"].)

The government undertakes licensing and inspection activities to insure public health and safety. The Legislature has apparently concluded that it is better public policy to leave an injured person to his remedy against the person actually causing the injury than it is to impose an additional liability on the government for negligently failing to prevent the injury, presumably because imposition of such liability would expose public entities to virtually unlimited risks and certain bankruptcy. Although in this instance Holt's insolvency makes Bijan's remedy against her ineffective, " '[f]ar more persons would suffer if government did not perform [its inspection] functions at all than would be benefited by permitting recovery in those cases where the government is shown to have performed inadequately.' " (*Morris* v. *County of Marin, supra,* 18 Cal.3d at p. 922, italics omitted [conc. opn. of Clark, J., quoting from the 1963 Rep. of the Cal. Law Revision Com., pp. 817-818].)

## DISPOSITION

The judgment is affirmed. The parties are to pay their own costs on appeal.

Devich, Acting P. J., and Ortega, J., concurred.